ALICE E. CALL, Appellant, v. BOARD OF REVIEW FOR SIOUX CITY, et al., Appellees.

No. 44384.

DECEMBER 13, 1938.

OPINION ON REHEARING FEBRUARY 13, 1940.

George R. Call, for appellant.

Ralph W. Crary and V. O. DeWitt, for appellees.

MILLER, J.—This cause has been submitted to us for reconsideration after the granting of a rehearing. For our former opinion, see Call v. Board of Review, 282 N. W. 705. Such opinion is now withdrawn, and the following substituted in lieu thereof.

The plaintiff is the owner of lots 1, 2, 3 and 4 in block 3, Rose Hill Addition to Sioux City, Iowa. Upon one of these lots is a large, 14-room house of frame construction, very well built with a tile or slate roof, and a garage. The house is between 45 and 50 years old, reasonably well kept up and in fair condition. In assessing plaintiff's property for taxation purposes, the real estate was assessed separately from the improvements. Lots 1, 2 and 3 were assessed at $1,632 each, lot 4 at $1,600, the house at $7,400 and the garage at $260, making the total assessment $14,156. The plaintiff appealed to the Board of Review, contending that the assessment was excessive. The Board of Review reduced the assessment on the house to $4,400, permitted the rest of the assessment to stand and fixed the total assessment at $11,156.

Plaintiff appealed to the district court, asserting that the assessment is excessive, more than the true market value of the property and confiscatory. The petition prayed that the assessment be reduced to $6,000. The answer was in the form of a general denial. The court's decree approved and con-

firmed the decision of the Board of Review, and dismissed the plaintiff's petition at her costs. Plaintiff appeals from such decree.

Plaintiff produced at the trial four witnesses, three of whom were engaged in the real estate business, and, as a valuation committee of the Sioux City Real Estate Association, had appraised plaintiff's property on May 15, 1937, at $7,200. In this appraisal, the value of three of the lots was fixed at $1,000 each, the corner lot at $1,200, and the improvements at $3,000. All four of plaintiff's witnesses testified to the correctness of such estimates of value.

The property was originally purchased by plaintiff's husband, since deceased, in 1908, for $15,000. It has been used as a family residence since that time and is now occupied by the plaintiff as her residence. The property is zoned for Class A residential purposes, which zoning excludes the right to use the property for any type of multiple dwelling. Plaintiff's witnesses testified that the property has no market value the way it now stands. The trend is toward smaller homes and in outlying districts. Plaintiff's property is less than a mile from the business district, and, because of its size, could not be rented for Class A residential purposes. It would be difficult, if not impossible, to find a tenant who would be willing to pay the heating bill. The property could not be rented for enough to pay the taxes. In fixing the value of the improvements at $3,000, the valuation was placed upon them not as the market value, but from the standpoint of salvage value. In arriving at a valuation, depreciation on the improvements was figured at 2 per cent per year and the total depreciation fixed at between 85 and 90 per cent. All of plaintiff's witnesses testified that the zoning of the property as Class A residential was a distinct detriment both to the land and the improvements. One of the witnesses testified to various attempts to get the property re-zoned. All such attempts were unsuccessful.

The only witness for the defendants was the assessor. In determining the ground values, he followed a systematic plan whereby the values were determined according to the size of the lot, location, etc., in an effort to afford uniform, fair assessed values, treating similar property alike. The record shows that

other lots in the same block with plaintiff's property were assessed for identical or very similar amounts.

In determining the value of the house, the assessor measured the house, computed its cubic content and determined its replacement value from a cubic cost figured at between 16 and 50 cents per cubic foot, depending on the type of construction. The record does not show the cubic content of the plaintiff's property nor the cubic cost price used by the assessor. He also figured depreciation at 1 per cent per year, and testified that he did not allow more than 25 per cent depreciation on any property. He gave little, if any, consideration to market value, holding to cubic-foot price. He considered the type of construction, but this appears to have been considered solely to determine the cubic-foot price. He did not consider earning capacity. The property was assessed at 100 per cent. The assessor admitted that he had no idea what the market value or the rental value of the plaintiff's property might be. He considered the zoning as Class A residential to be no detriment. He admitted making a distinction between residence properties and business properties when it came to considering income value in determining an assessment. There was testimony as to assessments on other residence properties, but they were admitted to be different types and different sizes from plaintiff's property.

In deciding whether or not the decree appealed from should be affirmed, our decision may be determined solely from the standpoint, whether the plaintiff sustained the burden of proof cast upon her. So considering the case, we are of the opinion that the burden was not sustained in regard to the valuation on the lots, but was sustained in regard to the valuation on the improvements.

■ I. The basis for assessing real estate is fixed by the legislature in section 7109 of the Code 1935, the last clause of which section reads: "The burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, or inequitable." In addition to such burden of proof, we have repeatedly held that there is a strong presumption in favor of the valuation fixed by the assessor, and have repeatedly refused to disturb the assessment because the presumption was not overcome by proof. Sioux City Bridge Co. v. Board of Review,

192 Iowa 1224, 184 N. W. 733; In re Appeal of Blank, 214 Iowa 863, 243 N. W. 173; Butler v. City of Des Moines, 219 Iowa 956, 258 N. W. 755; Crary v. Board of Review, 226 Iowa 1197, 286 N. W. 428.

Many of our decisions have been based upon the proposition that the valuation was not excessive, but inequitable. We have recognized that, even though the assessment is less than the value of the property, if it is inequitable when compared with assessments on similar property, it will be reduced to an equitable basis. Iowa Central Ry. v. Board of Review, 176 Iowa 131, 157 N. W. 731; Benson v. Town of LeClaire, 185 Iowa 506, 170 N. W. 747; Chapman Bros. v. Board of Review, 209 Iowa 304, 228 N. W. 28; Talbott v. City of Des Moines, 218 Iowa 1397, 257 N. W. 393. There is no claim in plaintiff's petition that the assessment as to lots was inequitable and, as above stated, the proof is exactly the reverse. From the record, the assessment of the real estate owned by plaintiff was made pursuant to a uniform system, treating similar property alike. While plaintiff's witnesses disagree with the assessor as to the value of plaintiff's lots, the reasons for such disagreement do not appear in the record. The assessments made on similar lots for the same amount are not challenged. We, therefore, hold that the presumption in favor of the assessment made on plaintiff's lots has not been overcome and, accordingly, plaintiff has not sustained the burden of proof cast upon her in regard thereto.

II. When we come to the assessment on the house, a very different situation confronts us. Counsel do not cite any of our prior decisions which would appear to pass upon an analogous case. We have made independent research and have been unable to find any decision by this court which would seem to be either controlling or persuasive as to the decision to be made herein.

Prior to 1924, the statute applicable in cases of this character was section 1305 of the Supplement of 1913. This statute provided that all property should be valued at its actual value but assessed at 25 per cent of such actual value. The section also provided "Actual value of property as used in this chapter shall mean its value in the market in the ordinary course of trade." The Fortieth General Assembly, Extra Session, by Sen-

ate File 183, section 30, amended section 1305 of the Code of 1897 and changed it to read substantially as now appears in section 7109 of the Code 1935. In commenting upon such change in the statute, we state in Hawkeye Portland Cement Co. v. Board of Review, 205 Iowa 161, 165, 217 N. W. 837, as follows:

"Section 1305 of the 1897 Code, being the corresponding section with Section 7109 of the Code of 1924, hereinbefore quoted, provides:

" 'All property subject to taxation shall be valued at its actual value. * * * Actual value of property as used in this chapter shall mean its value in the market in the ordinary course of trade.'

"The legislature saw fit to change the last sentence to read:

" 'In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property.' Section 7109, Code of 1924.

"It thus becomes apparent that the legislature had in mind that there might be property subject to taxation which would have no market value. Under the present statute, the assessor is to take into consideration the market value, if any, of the property. True, he is to take into consideration the productive and earning capacity, if any, past, present, and prospective; but these are all elements which go to make up market value, as well as actual value. If the property has a market value, then, as it occurs to us, there can ordinarily be no distinction between market value and actual value."

After reviewing two other decisions of this court and several decisions from other jurisdictions, we conclude as follows:

"Thus it is quite clear that, if property has a market value, said market value and the actual value are usually the exact equivalent of each other."

From the foregoing pronouncement of this court, it would seem that we are committed to the proposition that the legislature did not intend to radically change the method whereby actual value of property assessed for taxation was to be determined if the property has a market value. The difficulty

1122

that now confronts us is that the type of house owned by the plaintiff is such that it has no market value in the condition that it now stands. This appears to be due to two factors. One factor is that the house is out of date and not adaptable to use as a residence property. It undoubtedly has a sentimental value to the plaintiff, but such value is not a subject for taxation. Another factor which destroys the market value is the zoning ordinance which limits the use of the property to Class A residential purposes. Because of these two factors, appellant's witnesses all agree that the only value that can be fairly attributed to the improvements is a salvage value, which they fixed at $3,000.

The assessor admitted that he had no idea what the market value of the improvements was, nor what the rental or income value of such improvements was. He admitted that the latter was given no consideration and the former was given little, if any, consideration in determining the amount of the assessment. He placed the assessment on a replacement value figured on the basis of cubic content with a cubic-foot replacement price somewhere between 16 and 50 cents per cubic foot, but not disclosed in the record. From this replacement value, he figured depreciation at 1 per cent per year, with a maximum allowance for depreciation at 25 per cent. He considered the type of construction, but this seems to have been considered only for the purpose of determining the cubic-foot price.

The factors which the statute now requires the assessor to consider in arriving at the actual value are "its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property." We seriously doubt that the factors considered by the assessor are those which the statute requires him to consider. Certainly he overlooked factors which he should have considered. We are also convinced that, if the actual value of residence property is to be determined from its replacement value, figured on a cubic-foot price, that cubic-foot price must be reasonable and the allowance for depreciation must be just. The record does not disclose the cubic-foot price used by the assessor. If we are to presume that it was fair and reasonable, the record affirmatively shows that the standard for computing depreciation was unjust. It is obvious that 1 per

cent a year on a residence building 45 to 50 years of age, of frame construction, with a maximum allowance of 25 per cent, is not a just method of computing depreciation against the present replacement value of such property. Also the fact that the building has become obsolete and for that reason has no market value and has no earning capacity should have been considered under any fair interpretation of section 7109.

The assessor clearly did not properly perform the duties imposed upon him. The Board of Review recognized this fact when it reduced the assessment on the house from $7,400 to $4,400. In the record herein, the only testimony concerning the actual value of the improvements is the testimony of the plaintiff's witnesses. The evidence of the defendants does not present any basis for ascertaining such value, and shows affirmatively that the assessor acted improperly in undertaking to compute such value. Accordingly, we hold that the presumption in favor of the assessment on the house has been overcome, the burden of proof cast upon the plaintiff has been met and that the court should have granted plaintiff a reduction on the value of the house to $3,000.

By reason of the foregoing, this cause is reversed and remanded with instructions to enter a decree in harmony with this opinion.—Reversed and remanded.

SAGER, STIGER, RICHARDS, and BLISS, JJ., concur.

HAMILTON, C. J., dissents.