M. S. CRARY, Appellant, v. BOARD OF REVIEW OF BOONE et al., Appellees.

No. 44594.

1198

June 20, 1939.

Leonard S. Nelson, for appellant.

F. L. Mackey, for appellees.

OLIVER, J.—This controversy concerns the 1937 tax assessment upon three improved lots in Boone, Iowa, occupied by a two-story brick building, 75x100 feet, built in 1910 or 1912, and known as Crowe Garage. The garage and a grocery store occupy the first floor, the second floor being used for storage space and in addition containing a modern five-room apartment. A $10,000 mortgage, made in 1928 to a local bank, was foreclosed in 1935 and thereafter the property was handled by liquidating

trustees of said bank, who sold the same to appellant in 1937 for $10,000. Shortly prior to said sale the trustees had appealed from the order of the board of review of Boone, Iowa, fixing the assessment for taxes against said property at $8,400. Appellant, having been substituted as party plaintiff in the district court, prosecutes this appeal from the decree of said court affirming the action of the board of review.

At the time the property was assessed it was rented for $120 per month. It was carried on the books of the trustees at $12,000 or $13,000, two of whom, as well as a local contractor and two real estate dealers, estimated its value at $10,000 or slightly less. One realtor testified that it would cost a great deal more than that to construct the building, and one of the trustees, in estimating its value, took into consideration the difficulty of sale and of finding buyers.

In making assessments upon business property, the value of the lots and the improvements thereon were figured separately. The assessor followed a plan, in assessing lots, based largely upon their location. He also considered the opinions of real estate men and others who were familiar with lot values. The value of each building was estimated by figuring reproduction cost on a square foot basis and deducting estimated depreciation based upon the age of the building. The assessor had been a contractor by occupation, and his unit reproduction cost formulae were based upon the type and size of the building and character of construction. Details of this plan were worked out with the advice of certain appraisal engineers. The values of the buildings and lots were then totaled, although the record does not show what part of the total was represented by the respective items in this case. Estimated rental value was also considered and if the building had been constantly occupied its earning capacity was taken into account though "not very materially".

The assessed value was then fixed at 60% of the total estimated value. After this was done the assessor made a study of the assessments of other places in the state and particularly of the assessments of a comparable city in another county and concluded his assessments upon business property were too high. Upon his recommendation, a further reduction of 18% from the original estimated total value of each business property was

made by the board of review. Thus, the assessed value of each parcel of such real estate was ultimately fixed at 42% of the original estimate of the assessor.

I. Appellant's principal complaint is founded upon the alleged inequality of the assessment. Was the assessment grossly excessive, arbitrary, discriminatory and inequitable as compared with other similar properties in the same assessment district? The evidence of claimed inequality was limited to one other property, the Arie building, assessed at $6,265. The Arie building was of similar construction to the Crowe building, and produced about the same net income, and some witnesses testified it was in a better state of repair, was better arranged, and its location was somewhat more desirable. The record does not show the age of the Arie building, nor the size of the lots it occupies, but the building itself is 50 x 100 feet, as compared to 75 x 100 feet for the Crowe building. A witness estimated the value of the Arie property at $10,000. The sale of the Crowe property for that amount, while made in the open market, was connected with the liquidation of assets of a bank by trustees. While not strictly a ''forced'' sale, the contention of appellee that it did not reflect the true value is worthy of consideration. The Arie property was held in the same liquidation trust and was still unsold in December 1937. The assessor testified that he was very familiar with both properties; that the Crowe building was the better of the two; that its location was equally desirable, and that prior to 1933, it had been the better income producer. As recently as 1928, a local bank loaned $10,000 on a mortgage upon the Crowe property.

The trial court found that, in considering the contention that the assessment was disproportionate and discriminatory ''comparison with but one other property in a city the size of Boone, is insufficient to afford relief''. We agree with this finding. Manifestly, an assessment is not discriminatory unless it stands out above the general level. Were the rule otherwise an isolated instance of under-assessment might result in a general reduction for all similar properties.

Moreover, we think the showing that the assessments upon these two properties were disproportionate to their respective values was insufficient to overcome the presumption of their correctness. In Butler v. City of Des Moines, 219 Iowa 956,

at page 961, 258 N. W. 755, at page 758, Justice Powers, speaking for the court, said:

"The problem of determining relative values in a situation of this kind is one of the most difficult with which the courts have to contend. There is no such thing as absolute equality in the assessment of property for taxing purposes. What might seem to one qualified person to be the proper difference in valuation between two pieces of property might to another person, equally qualified, seem to be inequitable and unjust. It is the judgment of the assessor which the statute requires in making these assessments. So long as his action is not arbitrary or capricious or so wholly out of line with the actual values as to give rise to the inference that for some reason he has not properly discharged his duty, the assessments made by him and confirmed by the local board of review should not be disturbed by the court."

II. Another matter argued relates to percentage valuations. In considering this phase of the case it must be remembered that the controversy does not primarily involve the value of the lots as unimproved. No claim was made that they were over-valued. This court was not apprised either of the size or number of the lots assessed with the other building mentioned in the record. The argument revolves around the original estimated value of the Crowe building.

Appellant contends the assessment should be 42% of the actual value of the Crowe property. This argument is based upon the percentages deducted from the assessor's original figures in order to arrive at the assessed value. It is urged that the system of computing values employed by the assessor was erroneous as to appellant's property, but that since there is no evidence concerning other original valuations the others must be presumed to have been correct. This contention is not well founded. The record shows that in estimating the value of each business property the assessor employed the system of valuation as above described.

It is true that the formula used by the assessor allowed depreciation for all buildings upon the same annual basis and did not take into account all the elements mentioned in the statutes. However, it does not appear that it did not achieve approximate uniformity and reasonable equality of assessment.

That was the result to be attained. Hawkeye Portland Cement Co. v. Board of Review, 205 Iowa 161, 217 N. W. 837. In view of the fact that all business property was assessed upon a similar basis it may not be said that the system employed resulted in an excessive valuation in this case and presumably correct valuations in other cases.

That the estimated values produced by this system were generally excessive as compared to assessments in other comparable cities is evidenced by the proof that after they had been cut to 60%, a study of outside assessments convinced the assessor they were still too high. Upon his recommendation, the local board of review corrected this by making an additional cut amounting to 18% of the original estimated value of each business property.

Talbott v. City of Des Moines, 218 Iowa 1397, 257 N. W. 393, and authorities therein cited are not applicable to the factual situation in this case. In the Talbott case the assessed value was greater than the actual value and the real estate in question was not given the discounts allowed other property. Nor were the assessments in the Talbott case shown to have been made by any system designed to secure approximate uniformity and equality. In this case the assessed value was conceded to be less than the actual value. Moreover, the Crowe garage property received the benefit of discounts aggregating 58% of the original estimated value, along with all other business properties. Therefore, it does not appear that this property is justly entitled to additional discount.

 From the entire record we conclude that appellant has failed to sustain the burden of overcoming the presumption that the assessment as adjusted by the board of review was proper. Wherefore, the judgment and decree is affirmed.—Affirmed.

MITCHELL, C. J., and HAMILTON, SAGER, STIGER, MILLER, BLISS, HALE, and RICHARDS, JJ., concur.