OLIVER P. BENNETT, Appellee, v. BOARD OF REVIEW OF LITTLE SIOUX TOWNSHIP et al., Appellants.

No. 46422.

MARCH 7, 1944.

REHEARING DENIED MAY 6, 1944.

Robert B. Pike and Larned F. Brown, both of Sioux City, for appellants.

Oliver P. Bennett and Slattery & Fletcher, all of Mapleton, and A. H. Bolton, of Sioux City, for appellee.

MULRONEY, J.— The consolidated appeals here presented bring to this court the question of the correctness of the

1941 assessments of certain farm lands owned by Oliver P. Bennett, Marie C. Wetzel, Marie Bauer, Margaret D. Gibson, and E. S. Gaynor Lumber Company. The land is all located in Little Sioux Township of Woodbury County, Iowa, and the complainants filed written ‘objections with the township. board of review to the assessment made by the assessor January 1, 1941. The board made a blanket reduction of $10 per acre on land valued at $80 per acre and $5 per acre on all other land in the township. But the board adjourned without taking any action on the filed objections of the five complainants. The complainants appealed to the district court and that court, by separate decrees, ordered a reduction in the total assessment against each taxpayer. The board has appealed from these decrees.

These appeals are triable de novo in this court and therefore a somewhat extended review of the evidence of the various witnesses regarding the value of each farm is necessary. For convenience, we will review the value testimony with regard to each farm separately. Only farm land is involved. The complainants state that they make no complaint as to the assessment placed on buildings or improvements. The only question is whether the assessment is more than sixty per cent of actual value. Complainants admit that there was no attempt to show discrimination as between lands of complainants and other lands in the township.

### OLIVER P. BENNETT FARM.

This is 560 acres of unimproved farm land. It consists of fourteen forties. After making deductions for highways, railroads, and ditches applicable to each forty, 496 acres out of the 560 were placed on the assessor's rolls. The evidence showed that the owner and the assessor went over the property and agreed upon the proper amount of acreage that should be assessed in the various forties. Bennett testified that there is no complaint with regard to the assessor's figures as to the assessable acreage. Out of the 496 acres, 434 acres were considered by the assessor to be crop acres and 62 acres were considered not in cultivation as they were timber and waste land along the Little Sioux River. The assessed value placed by the board on the Bennett farm was $29,407. The district court held

the 496 assessable acres to have an assessed value of $23,808. The assessor testified in detail concerning the value of each separate forty in the Bennett farm and the amount of his assessment thereon. Of the fourteen forties, eight were assessed at $70 per acre, two at $60 per acre, one at $55 per acre, two at $35 per acre, and one at $20 per acre. The assessor was a farmer who had lived in the township since 1921 and he was first elected assessor in 1929. He stated that he had been on all the tracts from time to time and was familiar with the productivity of the different tracts. He stated:

"I went over at that time, asked him [Bennett] to see the crop report and I inspected the land aside from that. The crop report given was 11,000 bushels of corn, with approximately 210 acres in corn and of course these crop reports are taken every year, the amount of acres of corn or wheat or any grain * * * He reported 84 acres of wheat. For 1940 the yield of wheat was 30 bushels per acre. We checked through all the other crops. He had 45 acres of barley, 5 acres of 'oats, 30 acres of alfalfa, 60 acres idle land * * * I found 434 crop acres and that left the 60 acres * * * I will make this correction: When we added up the total we lacked 2 acres of making 496 acres so we deducted 2 acres more idle land, that makes 496 acres on the assessor's rolls and that is out of 560 acres * * * The difference between 496 taxable acres and 434 crop acres would be the timber land that is not in cultivation. But I took that into consideration in arriving at values."

In regard to the eight forties assessed at $70 per acre, the assessor testified that approximately $120 an acre was the fair actual value, and that he did not know of sand or gravel on this land but that the Charlie Johnson farm that joins this on the north will sometimes burn out in a dry year. He considered the Charlie Johnson land similar and of the same actual value, or $120 per acre, but the Bennett farm would produce better in a dry year to the extent of $15 per acre, but because of the point and diagonal rows on the Bennett farm he put the two on the same basis. In regard to the two forties assessed at $60 an acre, he stated that he took into consideration that there was a low place in this tract and it is more or less wet and not worth

as much as the eight forties tract. These two forties were put in at $100 per acre actual value because of the slough. In regard to the forty assessed at $55 per acre, the evidence showed that 17.5 acres of this forty were taken out for railroad and highways. In regard to the two forties assessed at $35 an acre, he stated there was less timber and more farm land in these two forties and the actual value was $60 per acre. In regard to the forty assessed at $20 an acre, he stated that he assessed this at $20 an acre because of the timber and winding river. He gave Bennett credit for 80 acres in his computation of acreage for farm land.

Two members of the board, Chilton and Blankenhorn, testified in support of the assessed valuations. They were both farmers who had lived on their farms in Little Sioux Township for thirty or forty years. A third member of the board, Holzman, appointed to fill a vacancy, and the township clerk, Corey, both farmers and farm owners in this township for many years, also testified in support of the assessments. Besides testifying to approximately the same valuations for each forty, these witnesses testified in detail that:

"That Bennett farm is considered one of the best producing farms in that country * * * We consider the Bennett land as producing about 50 bushels of corn * * * I have known the Bennett land for about 45 years. I have picked corn on it. I lived beside it two years. I have been familiar with it since Hollister Bros. leased it 34 years ago. I have been by it, seen the crops, and talked about it * * * It is pretty good wheat land, most of it. It is awful good alfalfa land * * *."

Corey, who had been a Triple-A committeeman and who had checked all these farms, stated:

"I know the Bennett farm is one of the best producing farms between Sioux City and Denison."

One board member testified that the timberland when cleared will produce more than any land Bennett has, and he had seen comparable land sell for $40 an acre in the timber and that price would be cheap.

Two neighboring landowners also testified in support of the assessment. Charles Johnson, a former member of the board of supervisors of Woodbury county and a resident of Little Sioux Township and the owner of the farm north of the Bennett land and adjacent to the tier of forties assessed at $70 per acre, testified that he was thoroughly familiar with the Bennett land. He stated the Bennett farm was black loam soil that raises good crops. He thought the average value per acre of the entire Bennett farm on January 1, 1941, was $95 per acre. He testified that there were more than 200 acres of the Bennett land that will produce similar to his. In 1940, which was a little dry, they both got forty-five to fifty bushels of corn per acre.

J. A. Baxter, a resident of Sioux City, who had long been engaged in the business of renting, buying, selling, and managing real estate in Woodbury county, testified in support of the assessment. He stated that he owned land comparable to the Bennett land in Little Sioux Township; that he had been through and over the Bennett land and that some forties would be worth more than others but that it seemed to him the 496 acres should be worth $100 an acre. His land, which compared to the tier of forties on the Bennett farm assessed at $70 an acre, was also assessed at $70 an acre and he stated that he was not complaining of his assessment.

Hal H. Lang, a Sioux City resident, testified as an expert on farm valuations in support of the assessment. He had been engaged in the real-estate business for twenty-five years and represented two Sioux City banks and one foreign insurance company in the making of farm loans. He had also been an inheritance-tax appraiser for Woodbury county for five years. He had been over the Bennett farm thoroughly in connection with the renewal of an insurance-company loan about ten years before. The loan that had been renewed ten or twelve years ago was $38,000. During the trial he again looked the land over and he was of the opinion that the value of the land on January 1, 1941, was $100 per acre.

Mr. Bennett gave no opinion as to the actual value of the land owned by him, either by forties or on average for the whole 560 acres in his farm. He stated that he was a practicing lawyer at Mapleton. He had presented his own objections to the as-

sessment before the board and he was attorney for the other complainants in the matter of their objections to their assessments, and he prepared and served all the respective notices of appeal to the district court. He testified in detail about most of the tracts and described the inconvenience and the diagonal rows caused by the highways, railways, ditch, and river that cut across the farm. He stated that he had owned the property since 1937 and part of the land was swampy; that the soil was black loam but part of it was gumbo and somewhat inclined to be sandy. He was of the opinion that there had been no appreciation in values of land like his in that vicinity since January 1937.

Mr. Bennett's tenant, R. H. Kunkel, who had farmed the land for the past three years, also gave no opinion as to the value of the farm but he stated that there is some sand on the farm that affects about 15 acres. He thought the corn this year (1942) would run sixty bushels to the acre. He would say that in 1940 they raised about eight thousand bushels of corn on 207 acres. He thought the farm would make a good stock farm. He testified that the great majority of the acres on the farm would produce, and the poorer land would produce two thirds of what the best would produce. The alfalfa was good and wheat ran twenty-one bushels to the acre in 1941. With regard to the land along the river, he stated that they were able to do something with this land since they got cattle.

Dr. George A. Rinker from Oto, Iowa, who owned a farm "not far from the Gaynor and Bauer land," testified that he knew the Bennett land and he would say it is worth $65 to $75 per acre.

T. J. Schoenjahn, the owner of the farm that joins Bennett's land on the east (in another township), testified that he knew the Bennett land and he would say it "would be reasonably worth $40 to $45 an acre."

Another farmer, Frank Stickney, from an adjoining township, who had known the Bennett farm for five years and had checked it for the Triple-A, stated:

"In my opinion the whole Bennett tract of 640 acres, including the waste land, all straight through is worth $50 per acre."

Another witness, Casper Uhl, who lived about four miles from the Bennett land and knew it well for sixty years, stated that he had put up hay on the Bennett land and that there are swales on it and it is wet in the spring. He would not consider it worth over $40 per acre on January 1, 1941.

Another witness, C. L. Roe, a real-estate man in Sioux City for twenty years, looked the farm over the morning of the trial and testified it was worth $58 per acre on January 1, 1941, without figuring acreage losses for the ditch, railway, or highways.

S. F. Hoffman, who lived in the vicinity for twenty years and who stated that he was a farm appraiser and farm manager, checked the farm the morning of the trial. He had appraised the land in 1933. He divided the farm into four tracts of 80, 110, 140, and 280 acres. He valued the first two at $2,200, the third at $40 an acre, and the fourth at $65 an acre. From these he would deduct ten per cent because land had risen in value that much since January 1, 1941.

## E. S. GAYNOR LUMBER COMPANY LAND.

This is a tract of 620 acres upon which the board placed an assessed value of $9,946. The trial court ordered the assessed value reduced to $5,967.84. The assessor testified that in assessing this land he took into consideration that it only had 100 acres of crop land on it, but as a matter of fact the Triple-A had figured 190 acres. Three forties were assessed at $35 an acre, one at $20 an acre, and the other fourteen at $15 an acre. The assessor left out approximately 90 acres of rough land. Chilton, Blankenhorn, and Lang testified the land had an actual value of $25 an acre on January 1, 1941, while Corey testified that the land was worth $30 an acre average for the whole tract. All of these witnesses were familiar with the land.

Gaynor, a lumberman in Sioux City, testified the land was rough and it had steps and banks twenty feet high. He had a $3,000 mortgage on it and he stated the land was not reasonably worth more than $10 an acre on January 1, 1941. Bennett testified the land is mostly gulleys, hills, and brakes and that it has no fences and a poor type of grass. He said it was not worth over $12.50 per acre. Rinker placed a value of $8 an acre

and Hoffman thought the land, on January 1, 1941, had a reasonable value of $10 an acre.

It will be noted that all of the value witnesses other than the assessor testified to the value of the tract per acre without considering the 90 acres omitted by the assessor.

### MARGARET D. GIBSON LAND.

This farm of six forties was assessed by the board at $9,535. The court ordered this reduced to $6,883.20. The assessor testified that four forties were of the actual value of $45 per acre, one was worth $40 an acre, and one, known as the timber forty, was worth $20 an acre. He knew the land and he stated it had been rather poorly farmed but that the present tenant had raised the yield from forty bushels and at one time it was considered one of the good farms up and down the valley, and with proper farming it is capable of producing equal to any farm around it.

Holzman testified the four forties assessed by the assessor at $45 an acre had an actual value of $70 an acre. The forty assessed by the assessor at $40 an acre was worth $60 an acre and the timber forty was worth $30 an acre. Corey's testimony was about the same, except that he thought the forty assessed at $40 an acre was actually worth $70. Blankenhorn and Chilton thought all but the timber forty was worth $70 an acre. Chilton thought the timber forty worth $30 an acre and Blankenhorn thought it worth $40 an acre. All of these witnesses were familiar with the land. Holzman had lived on an adjoining farm, Chilton had worked on the farm, and Corey had checked it for Triple-A.

The owner did not testify. Uhl and Bennett were the only witnesses who testified as to the value of the farm for her. The former placed a valuation of $25 to $30 an acre on the farm and the latter testified it is hill land and the fertility is run down and, "I put the Gibson land in at $20 an acre."

### MARIE WETZEL LAND.

This tract consists of four forties (one fractional), two in section 16 and two in section 22. The entire tract was assessed by the board at $4,497 and this was reduced by the court to $3,408. The assessor testified that this farm had been rather

poorly farmed but it is capable of producing, and, as a matter of fact, the present tenant raised the yield from twenty to twenty-five bushels of corn per acre to fifty bushels per acre. He was thoroughly familiar with the land and he felt the eighty in section 16 as good as similar tracts around it, and he valued this eighty at $75 an acre with $45 per acre assessed valuation. The tract in section 22 is timber, although it is somewhat cut out and the man this year plowed and put 11 acres of corn on it. He valued this at $25 an acre with $15 assessed valuation. There were only 22.8 acres in one forty in section 22 assessed.

Chilton, Blankenhorn, and Corey placed an actual valuation on the eighty in section 16 at $75 an acre. Chilton thought the land in section 22 worth $27.50 per acre and Blankenhorn thought it worth $30 an acre. Corey also testified that he thought the land in section 16 worth $72.50 an acre and the land in section 22 worth $30 an acre for he knew there were walnut logs on the timberland, and he stated:

"I know there was $200 worth of walnut logs sold up there * * * this summer."

The owner did not testify, but Uhl valued the timber eighty at $10 an acre and the other eighty at $35 an acre. Rinker testified the timberland was worth $12 an acre and the other eighty was worth $45 an acre. Schoenjahn, Hoffman, and Bennett testified the whole tract worth $20 an acre.

### MARIE BAUER LAND.

This tract consists of two fractional forties containing in all 69 acres, which was assessed by the board at $4,140. The trial court ordered this reduced to $3,519. The assessor testified that this land was as productive as any land in the Little Sioux Valley. He stated that he had seen an accurate crop report kept by the tenant for three or four years and it showed that the land produced fifty bushels of corn per acre. He stated that the land was somewhat inaccessible, but if it had not been for that he would have valued the land at $120 an acre.

Chilton, Blankenhorn, and Lang valued the land at $100 an acre. Holzman and Corey valued it at $110 an acre. They all knew the land for many years and Corey stated the land had

always yielded fifty-five bushels of corn per acre and he had known of yields up to eighty bushels an acre.

The owner did not testify. Rinker testified it was worth $55 an acre and Stickney thought it was worth $50 an acre straight through. Rinker stated the Bauer land had produced wonderful crops when the season was right, and Stickney stated he had seen the Bauer land raise ninety bushels of corn to the acre and he had seen it raise a lot less.

The foregoing constitutes a review of all the testimony with respect to the value of the five farms in question. There was some other evidence of sales in the vicinity comparable to some of the farms in controversy. Bennett testified that a farm was sold "immediately to the southeast [of his farm] within a quarter of a mile for $20.00 an acre, according to information received." He also stated he purchased a farm a mile and a quarter east, consisting of 24 acres, for $19.50 an acre in the summer of 1942. The record is silent as to whether the farms are comparable to any of the land in question. There is no description of the first farm sold and the second that Bennett purchased is merely termed a "hill farm" and this farm was located in another township. The assessor testified to a 30-acre-tract sale in 1939 for $1,000. He stated:

"It is land up in the brakes and compares to the Gaynor land."

Holzman testified the Peckenpaugh farm located just across the line from Little Sioux Township in Grant Township sold for $62.50 per acre. He stated it was similar to the Gibson land and "That sure was sold cheap." He also testified that Carl Callahan bought a 120-acre farm that he gave $100 per acre for, and the Francis farm in Grant Township, also comparable to the Gibson land, sold for $100 or $110 an acre recently.

Chilton testified the Baxter farm, located a mile north of the Bennett farm and "a good deal the same as the Bennett land," sold for $110 an acre. He thought the land bought by Callahan was not as good as the Bennett land, and the Peckenpaugh farm was not as good as the Wetzel or Gibson land. Blankenhorn testified about a sale of 54 acres for $3,500, with 35 acres

of farm land and the rest rough. He stated it was not worth as much as the Gaynor land.

I. The assessment as made by the assessor and taxing authorities should be permitted to stand unless, upon the whole record, the evidence in favor of the complainants is sufficient to overcome the strong presumption in favor of the valuations of the taxing authorities. Section 7109, Code of 1939; Hanson v. Local Board of Review, 232 Iowa 390, 4 N. W. 2d 384; Butler v. City of Des Moines, 219 Iowa 956, 961, 258 N. W. 755, 758. In the last-cited case we stated:

"It is the judgment of the assessor which the statute requires in making these assessments. So long as his action is not arbitrary or capricious or so wholly out of line with the actual values as to give rise to the inference that for some reason he has not properly discharged his duty, the assessments made by him and confirmed by the local board of review should not be disturbed by the court."

The complainants have not met their burden by merely showing a difference of opinion as to the value between their witnesses and the assessor. We stated, in Sioux City Bridge Co. v. Board of Review, 192 Iowa 1224, 1225, 184 N. W. 733:

"* * * that courts will not give relief against an assessment on account of mere difference of opinion, but where it is manifest that the assessment is grossly excessive, and is a result of the exercise of the will, but not of the judgment, relief will be granted."

In Call v. Board of Review, 227 Iowa 1116, 1120, 290 N. W. 109, 111, we commented on the evidence in that case:

"While plaintiff's witnesses disagree with the assessor as to the value of plaintiff's lots, the reasons for such disagreement do not appear in the record. The assessments made on similar lots for the same amount are not challenged. We, therefore, hold that the presumption in favor of the assessment made on plaintiff's lots has not been overcome and, accordingly, plaintiff has not sustained the burden of proof cast upon her in regard thereto."

The trial court does not become an independent assessing tribunal when an appeal is taken to it by a complaining taxpayer. While it is true the appeal is heard in equity, and section 7134, Code of 1939, provides the courts shall "determine anew all questions arising before the board which relate to the liability of the property to assessment or the amount thereof * * *," still the court only determines the correctness of the assessment with reference to the complaint made before the board. We have held the court could decrease but not increase the tax assessment when the appeal is by the taxpayer. Frost v. Board of Review, 114 Iowa 103, 86 N. W. 213; Farmers' Loan & Trust Co. v. Town of Fonda, 114 Iowa 728, 87 N. W. 724; Central Life Assur. Soc. v. City of Des Moines, 212 Iowa 1254, 238 N. W. 535, 78 A. L. R. 551.

Turning now to the evidence of the complainants to see if it is sufficient to warrant reduction of the presumed correct assessment, we find nothing to indicate that the assessor or board acted arbitrarily or capriciously. It is apparent that their assessments are the result of honest judgments. Even Bennett, when settling the acreage in one forty with the assessor, stated:

"I should say 37½ acres of that forty is tillable, although the Assessor only puts in 35 acres. We aren't quarreling with him on that. I know how much it is. He does the best he can because it is a difficult job."

It is difficult to judge and determine the value per acre of the 40-acre tracts. Honest minds will differ. Section 7109, Code of 1939, states that the assessor shall:

"* * * take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; and the burden of proof shall be upon any complainant attacking such valuation as excessive * * *."

It is quite apparent that the assessor did take into consideration the earning capacity, both past and future. And he took into consideration the market value. The evidence of what the land produced is not in serious dispute. The assessor gave recognition to the things such as ditches, rivers, railways,

and highways that rendered parts of the land inaccessible or caused point rows. It is not clear that all of complainants' witnesses knew about the earning capacity of the farms. The witness Roe, testifying as a real-estate expert, stated:

"I made no investigation as to the productivity of the Bennett land in 1940 before making my valuation for this case."

He had gone over the Bennett land the morning of the trial. Nor does it appear that Uhl or Hoffman knew anything about the productivity of the land that they testified about. Perhaps Stickney and some of the other witnesses for the complainants knew in a general way something about the productivity of the various farms, but their opinions as to their values did not appear to be based on any such knowledge. In fact, not one of them gave any reason for his disagreement with the assessor. The land was all assessed by the assessor in 40-acre tracts, in accordance with the tax list prepared pursuant to section 6962, Code of 1939. The complainants had before them the assessor's valuation of each forty. Only a few of complainants' witnesses stated their opinion as to the value of separate forties. Most of them lumped the good land with the bad and stated their conclusion of the value per acre of the whole tract. We do not know whether complainants' witnesses, or some of them, would agree or disagree with the assessor's valuation on some of the forties in some of the farms.

Even complainants' witnesses differed rather widely on their estimates of value per acre of the various farms. There is substantial supporting evidence for the assessor's valuations by persons who knew the farms well and by adjoining landowners. While there is a conflict in all the testimony as to value, we can only say the evidence supporting the assessment at least balances the opinion evidence of the complainants. The complainants did not meet the burden cast upon them to overcome the presumption that the assessments are correct. The assessments should have been affirmed.

II. Other propositions are argued by the board but because of our decision on the merits they need not be decided. In passing, however, we desire to point out a practical difficulty that is encountered when the assessment is in 40-acre tracts

and the decree makes a blanket reduction such as in the Bennett case for fourteen forties. Section 7134, Code, 1939, provides that the decision of the trial court shall be certified to the auditor, "who shall correct the assessment books in his office accordingly." The decree of the trial court reducing the assessments should refer to the assessments of the tracts as they appear on the tax books in order to enable the auditor to make the proper correction.

■ The decision of the trial court is reversed and the five cases remanded with instructions that a decree be entered in each case affirming the assessments as fixed by the board, with one fifth of the costs taxed against each complainant.—Reversed.

SMITH, C. J., and HALE, BLISS, MILLER, WENNERSTRUM, GARFIELD, and MANTZ, JJ., concur.