DEERE MANUFACTURING COMPANY, appellant, v. M. B. ZEINER, as chairman of Board of Review for Polk County, et al., appellees.

No. 48953.

(Reported in 78 N.W.2d 527 and 79 N.W.2d 403)

SEPTEMBER 18, 1956.

SUPPLEMENTAL OPINION and REHEARING DENIED

NOVEMBER 16, 1956.

Gibson, Stewart & Garrett, of Des Moines, and George E. Pike, of Waterloo, for appellant.

Leo J. Tapscott, County Attorney, J. R. McManus, and A. R. Shepherd, all of Des Moines, for appellees.

GARFIELD, J.—Plaintiff is a wholly owned subsidiary of Deere & Company, second largest manufacturer of farm machinery. Defendants are members of the Polk County Board of Review. Plaintiff operates a manufacturing plant about 10 miles north of the center of the Des Moines business district, adjacent to the town of Ankeny. The plant consists of about 507 acres of land and 24 buildings, all but one of which the Federal Government built in 1941 and 1942 for the manufacture of small arms ammunition. Deere purchased the property from a government agency and took possession September 30, 1947.

Plaintiff made complaint to the Polk County Board of Review from the action of the county assessor in assessing its plant for 1953, contending the valuations placed thereon were excessive and inequitable. The board confirmed the assessments. Plaintiff then appealed to the district court from the board's action. The court heard the appeal in equity, determined the assessor's valuations of plaintiff's land and buildings were excessive and inequitable and reduced them 12%. (See sections 442.5 –442.7, Code, 1954.) Both plaintiff and defendants appealed to us from the decree.

Two assessment rolls are involved. The principal one is No. 579 against parcel 737 containing about 446 acres. It lists the 100% values as follows: land $151,170; buildings, including machinery and equipment, jigs, dies and tools, $6,838,705; total (sum of the other two figures) $6,989,875. The 60% assessed value is $4,193,925. (See Code section 441.13.)

The second assessment roll, No. 580, is against parcel 738, the sewage disposal plant and 60.75 acres of land, valued at $300 per acre. It lists the 100% value of the land at $18,225; of the buildings at $10,500, and the total (sum of these two figures) at $28,725. The 60% assessed value is $17,235. We are concerned only with the 100% values as to both parcels, mainly 737.

Plaintiff's petition in district court, filed June 25, 1953, alleged the making of the assessments as stated above and that the 100% values fixed by the assessor are excessive and inequitable,

arbitrary, fraudulent and illegal; the land should not have been valued at more than $200 per acre, a total of $101,334, nor the buildings, machinery, equipment, jigs, dies and tools more than $4,299,656—total for both land, buildings, machinery, etc., $4,-400,990.

After defendants answered the petition they filed thirteen interrogatories to be answered by plaintiff, stating the answers were necessary to enable defendants adequately to prepare for trial. (See Rule of Civil Procedure 121.) Interrogatories 4 to 9 asked plaintiff to list its machinery, equipment, jigs, dies and tools, the dates of acquisition and cost thereof. March 13, 1954, plaintiff amended its petition by alleging: in assessing parcel 737 the assessor determined the value of the classes of plaintiff's property as follows: land $151,170; buildings and equipment $4,201,019; machinery $2,240,505; jigs and dies $397,181; total $6,989,875; plaintiff challenges only the valuations upon land, buildings and equipment and does not challenge the values of machinery, jigs and dies (which total $2,637,686); "this action challenges the total assessments to the extent they are affected by the erroneous and illegal assessments of land, buildings and equipment" which should not be valued at more than $4,400,990.

The day plaintiff amended its petition it filed objections to defendants' interrogatories, stating Nos. 4 to 9 request information not then in issue since plaintiff does not challenge the assessor's values of its machinery, jigs and dies; "the only issues are as to the assessor's valuations of the land and buildings set out in the petition as amended." The objections state plaintiff is willing to submit such information as it had in answer to interrogatories 1 to 3. The court sustained plaintiff's objections to interrogatories 4 to 9 and overruled its objections to 10 to 13.

March 24, 1954, defendants filed their application for production of books and papers. (See Rule of Civil Procedure 129.) Paragraphs 5 to 7 sought about the same information requested in defendants' interrogatories 4 to 9. The court overruled paragraphs 5 to 7 with the statement, "In view of plaintiff's amendment the question of the valuation of the machinery has been taken from the case." Throughout the trial plaintiff objected to evidence bearing on the value of its machinery, jigs, dies and

tools as not within the issues. It never furnished the information defendants sought in interrogatories 4 to 9 and paragraphs 5 to 7 of their application to produce books.

I. It seems best to determine first whether plaintiff is entitled to relief from the assessment against parcel 737 without showing the 100% total value fixed by the assessor is excessive or inequitable. Plaintiff made no attempt to do so except, perhaps, by evidence the assessor in computing such total value placed too high values upon the land and buildings, exclusive of machinery, jigs, dies and tools. It appears the assessor informed plaintiff during the pendency of the appeal in district court that in reaching the total value shown on the assessment roll for parcel 737 he computed the values of the different items of property as subsequently alleged in the amended petition.

Code section 428.22 provides: "Machinery used in manufacturing establishments shall, for the purpose of taxation, be regarded as real estate." See Northwestern States Portland Cement Co. v. Board of Review, 244 Iowa 720, 728, 58 N.W.2d 15, 20. We understand "jigs, dies and tools" are also machinery and this seems to be conceded, but the point need not be decided. Certainly plaintiff's machinery is deemed real estate for the purpose of taxation.

 We think the ultimate issue upon plaintiff's appeal to the district court from the assessment on parcel 737 was whether the total values fixed by the assessment roll were excessive or inequitable and plaintiff was not entitled to relief without a clear affirmative showing on this issue. It was not sufficient to offer evidence tending to show the buildings, exclusive of the machinery, were valued too high or inequitably. The manner in which the assessor computed total valuations placed upon the assessment roll is not of controlling importance provided the result reached was not excessive or inequitable.

In Iowa Building Corp. v. Zirbel, 237 Iowa 242, 248, 21 N.W.2d 576, 579, the assessor without using his own judgment accepted valuations by an appraisal company which had mistakenly assumed the property had a greater frontage than it actually had. We reversed the trial court's reduction of the assessment. This is from the opinion: "But we must weigh the

evidence to determine whether the assessment, *however arrived at,* was 'excessive' or 'inequitable.' * * *

"*Regardless of the manner in which the assessment was made* and without according it the usual presumption of correctness, we are still unable to say it was either excessive or inequitable." (Emphasis added.)

In re Appeal of Bankers Life Co. v. Zirbel, 239 Iowa 275, 279, 31 N.W.2d 368, 371, involves another assessment in which the values were fixed in the same manner as in the first Zirbel case although there was no mistake in frontage of the property. We upheld the assessment. The opinion states: "Nevertheless it is true here as it was in the Zirbel case that under the statute the burden is upon the appealing taxpayer to establish that the assessment is in fact excessive or inequitable, *however it was computed.*" (Emphasis added.)

Clark v. Lucas County Board of Review, 242 Iowa 80, 97, 44 N.W.2d 748, 757, follows the two Zirbel cases, supra, and quotes with approval from the first one. See also Haubrich v. Johnson, 242 Iowa 1236, 1246, 50 N.W.2d 19, 25.

The supreme court of Pennsylvania has at least twice approved this statement with which we agree: " 'When an appeal is taken from the decision of the board of revision * * * to the court * * * the question before the latter tribunal is not whether the value placed upon certain constituent elements properly entering into the value of the subject of taxation is just and equitable, but whether the assessment of the subject as a whole is just and equitable.' " In re Appeal of John Wanamaker, Philadelphia, 360 Pa. 638, 647, 63 A.2d 349, 351, 353; Hammermill Paper Co. v. City of Erie, 372 Pa. 85, 92 A.2d 422, 427.

Since plaintiff's machinery was not assessed separately the valuation computed thereon is to be treated merely as an intermediate step in ascertaining the value of plaintiff's buildings as a whole. See Appeal of Susquehanna Collieries Co., 335 Pa. 337, 6 A.2d 831, 833.

■ When plaintiff appealed from the action of the board of review the trial court did not become an independent assessing tribunal. Its function was to determine the correctness of the assessment with reference to plaintiff's complaint before the

board. Bennett v. Board of Review, 234 Iowa 800, 811, 13 N.W.2d 351, 357; Iowa Building Corp. v. Zirbel, supra, 237 Iowa 242, 244, 21 N.W.2d 576, 577; 84 C.J.S., Taxation, section 558b, pages 1093-4. Certainly such complaint was that the total valuations fixed by the two assessment rolls were excessive and inequitable.

It might be argued that if defendants contended the assessor, in reaching his total valuations, computed the value of the machinery or jigs, dies and tools too low the burden would rest on defendants to show this to be the fact. But we think they were under no such burden. Plaintiff was required to prove the total valuations were excessive or inequitable. This is the effect of Code section 441.13 and our repeated holdings. Rosenbaum & Sons, Inc. v. Coulson, 246 Iowa 848, 860, 69 N.W.2d 403, 410; Haubrich v. Johnson, supra, 242 Iowa 1236, 1246, 50 N.W.2d 19, 25; Corn Belt Theatre Corp. v. Board of Review, 234 Iowa 355, 360, 361, 12 N.W.2d 820, 823, and citations in these opinions.

The value the assessor computed for the machinery may have been too low. There is a good deal of evidence that in plants such as this the value of the machinery generally about equals the value of the buildings without the machinery. There is testimony too that the total value of the machinery in all sixteen Deere plants and in plaintiff's four Iowa plants about equals the total value of buildings exclusive of machinery. Also that in plaintiff's Waterloo plant the machinery exceeds the buildings in value. The above evidence is not disputed. It is to be inferred the machinery was installed new in this plant after plaintiff took possession of it in the fall of 1947.

Plaintiff was evidently unwilling to disclose the cost or valuation it had placed upon its machinery, jigs, dies and tools. The trial court, erroneously we believe, refused to compel such disclosure. Plaintiff's principal explanation for its unwillingness to reveal these facts is that the trial would thereby have been unduly prolonged.

II. Although Division I hereof seems determinative of the case as to value of the buildings on tract 737, we are unwilling to rest our decision solely thereon. We consider next whether plaintiff's theory as to value of its buildings and testimony in support thereof should be accepted.

1372

We shall not attempt to state all the contentions plaintiff makes in over 400 pages of brief and argument. In the main, however, it complains that this plant, designed and built for the wartime manufacture of small-arms ammunition, has proven not suitable for plaintiff's purposes largely because of the type and location of the buildings and other structures; the plant has no market value; it has proven too expensive to operate; plaintiff lost $5,138,749 in operating it from 1947 through 1953. In short plaintiff says the plant is a "white elephant."

The assessor's approach to valuing the buildings was first to compute the reproduction cost of each building as of January 1, 1953. Because he thought building costs were then too high he took 44.44% of the 1953 cost to obtain the cost as of 1941. From this last figure he deducted such amounts for both physical and functional depreciation as he felt, from his observations of the plant, were proper. From the remaining sum he arbitrarily deducted $169,000. The assessor testified plaintiff's manager told him the plant was losing money and he took this into account. The J. M. Cleminshaw Company of Cleveland, with wide experience in appraisals, valued the plant in the fall of 1948 by about the same method as the assessor used this time.

A Mr. Giffels, an engineer-architect from Detroit of much experience with extensive projects, testified for plaintiff the plant was so poorly suited for plaintiff's purposes its value could not properly be arrived at by reproduction cost but an earning or productivity approach should be used. Accordingly he had designed a hypothetical plant well suited to plaintiff's operations and estimated its cost at $12,315,000.

Giffels accepted the testimony of Mr. Bergdahl, plaintiff's plant engineer, that $677,000 is the annual excess cost of operating the present plant over the cost of operating the properly designed hypothetical plant. Mr. Giffels then capitalized these "operational handicaps" of $677,000 at 6% for a total of $11,283,000. This figure he deducted from his estimated cost of the hypothetical building to get $1,032,000 as the value of the existing buildings if they were new. From this last sum the witness deducted 25% depreciation, leaving $774,000 as his "opinion of the value for Deere purposes of the buildings and facilities, exclusive of production machinery and equipment and land."

Professor McKean of Iowa State College gave testimony similar to Mr. Giffels'. He said the buildings are worth less than nothing from the earnings approach. He accepted Giffels' and Bergdahl's figures as to cost, respectively, of the hypothetical building and the operational handicaps of the present plant and computed the value of the existing buildings as Giffels did except the professor deducted 33⅓% depreciation, rather than 25%, leaving $687,778 instead of $774,000 as such value.

It is clear the trial court did not accept the theory expounded by Messrs. Giffels and McKean or he would have reduced the assessor's values of the buildings much more than 12%. Nor are we prepared to accept the theory. To compel the assessor to resort to such procedure to arrive at the value of these buildings would, from a practical standpoint, place a very heavy burden upon him we think the law does not contemplate. He should not be required to employ an architect to design a hypothetical plant of such magnitude and estimate its cost.

Nor are we persuaded plaintiff's theory meets the requirements of Code section 441.13: "In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; * * *."

Mr. Giffels and Professor McKean gave controlling consideration to the past earnings of the plant, virtually disregarding its earning *capacity* and all other matters that affect the actual value. Then too, as Mr. Giffels said, his final figure represented his opinion of value of the buildings "for Deere purposes."

Our attention has not been called to a decision of an appellate court which accepts such a theory as Messrs. Giffels and McKean advanced. In re Appeal of Bankers Life Co. v. Zirbel, supra, 239 Iowa 275, 284, 31 N.W.2d 368, 373, is in some respects like the present case. It was there contended the "excess construction" in the monumental character of the Bankers Life building in Des Moines lowered its taxable value and the assessor did not take into consideration its "economic obsolescence." As stated, we affirmed the assessment and held testimony somewhat like that given by plaintiff's two experts here was, to say

the least, not controlling (page 284 of 239 Iowa). We also pointed out (page 282) that what is now Code section 441.13 "in effect requires the assessor to take into consideration available *evidence* bearing on 'productive and earning capacity', etc."

Several of our decisions uphold assessments in which valuations were reached in much the same way employed by the assessor here. Of such method of computing value of buildings Daniels v. Board of Review, 243 Iowa 405, 416, 417, 52 N.W.2d 1, 8, says: "It fairly appears from the record that the system employed for building appraisals upon which the building assessments were based was about as scientific an approach to the difficult problem of building appraisals as it is possible to obtain. When applied uniformly, and the record shows it was so applied, it would secure equality in the distribution of taxes. Of course it leaves estimation of physical and functional depreciation for the opinion of the appraisers and assessors. But at least it reduces the field for variance to depreciation and to this extent it is an improvement over appraisals made up wholly of the opinion of the appraiser."

It appears here the assessor used substantially the same method of computing values of buildings throughout the county. Other precedents affirming assessments on buildings where valuations were computed in about the same way as here are Haubrich v. Johnson, supra, 242 Iowa 1236, 1245, 50 N.W.2d 19; Clark v. Lucas County Board of Review, supra, 242 Iowa 80, 44 N.W.2d 748; In re Appeal of Bankers Life Co. v. Zirbel, supra, 239 Iowa 275, 31 N.W.2d 368; Crary v. Board of Review, 226 Iowa 1197, 1199, 286 N.W. 428.

■ That reproduction cost less depreciation is or may be a criterion of valuation for tax purposes see annotation 104 A.L.R. 790.

In addition to the assessor and chairman of the board of review, defendants called four well-qualified value witnesses. One was employed by a large engineering firm in Chicago. Another was Wm. Cleminshaw, associated with the Cleminshaw Company of Cleveland. The other two were Des Moines men with wide experience in valuations. The assessor had studied engineering two years in college. The chairman was a graduate engineer with considerable experience in construction work.

Both were experienced in appraisals. The assessor had held his office since January 1, 1950, and was a Des Moines deputy assessor from 1942 to 1950.

The assessor and one of the defendants' value witnesses testified, in effect, they had never used such a method of valuing a factory as Messrs. Giffels and McKean advanced. Cleminshaw and another value witness said they never heard of such a method. Cleminshaw also pointed out the figures of plaintiff's witnesses do not take into consideration the added cost of occupying the hypothetical plant, such as return on the investment, taxes, insurance, upkeep and depreciation.

III. If the theory of valuation considered in Division II hereof is not accepted there is no substantial basis for any reduction of the value of the buildings on parcel 737 (all but the sewage disposal plant) as fixed by the assessor and confirmed by the board of review. Nor do we think there is sufficient showing to warrant reduction of the other valuations fixed on either assessment roll.

Our precedents make it quite plain that, as stated in Division I, plaintiff is not entitled to relief, regardless of the manner in which the assessment was arrived at, without showing it was either excessive or inequitable. And "it is established that the courts will not lightly overturn the decision of the taxing bodies." Haubrich v. Johnson, supra, 242 Iowa 1236, 1247, 50 N.W.2d 19, 25.

In order to show its assessment was inequitable it was necessary for plaintiff to prove similar property in the same county was assessed lower than its plant. There must be some substantial similarity before a basis for comparison is presented. Rosenbaum & Sons, Inc. v. Coulson, supra, 246 Iowa 848, 859, 69 N.W.2d 403, 409; Daniels v. Board of Review, supra, 243 Iowa 405, 413, 52 N.W.2d 1, 6; Clark v. Lucas County Board of Review, supra, 242 Iowa 80, 90, 44 N.W.2d 748, 754; Crary v. Board of Review, supra, 226 Iowa 1197, 286 N.W. 428.

The record clearly shows and plaintiff asserts in argument several times there is no property in Polk County or in Iowa similar or comparable to plaintiff's. There is clearly insufficient basis for holding plaintiff's assessment should be re-

duced as inequitable when compared to similar properties. An attempt was made to prove the assessor's value of plaintiff's land was discriminatory as compared with several tracts used for farming. However, the substantial similarity of these other tracts does not appear. Defendants met plaintiff's evidence by showing values of several tracts purchased for industrial sites with which the value placed on plaintiff's land is not out of line.

Courts will reduce assessed values where it clearly appears they are excessive even though they are not inequitable or discriminatory as compared with assessed values of similar property. However, in most instances where the courts have granted the taxpayer relief the assessment was inequitable. Hanson v. Board of Review, 232 Iowa 390, 394, 4 N.W.2d 384, 386, and citations; Deur v. Board of Review, 232 Iowa 989, 7 N.W.2d 39; Clark v. Lucas County Board of Review, supra, 242 Iowa 80, 96, 44 N.W.2d 748, 757. See also Call v. Board of Review, 227 Iowa 1116, 1120, 290 N.W. 109.

It is not shown the valuations on the assessment rolls exceed actual values.

Deere paid the government $4,150,000 for its plant in the summer or fall of 1947. Before 1953 it spent about $1,000,000 in improving it for the purpose of making it more suitable. These figures do not include the cost of machinery, jigs, dies and tools. As stated, the assessor computed the value of these items at $2,637,686 and plaintiff does not dispute this figure. The government invested about $32,000,000 in its ordnance plant in 1941 and 1942. Plaintiff acquired most of the valuable buildings but now owns only about 507 acres of the total area of some 4400 acres previously owned by the government.

It is doubtless true the plant was constructed hastily with little consideration as to cost. Building costs increased about 35% from the time plaintiff acquired this property, and at least doubled from 1941-2 to January 1, 1953. Plaintiff carried $9,-772,000 fire insurance on its buildings. In 1948 it built a new steel warehouse, 100 by 400 feet, at a cost of about $142,000. In computing his values the assessor included this building at $87,638.

If we deduct the assessor's estimated value of machinery,

jigs, dies and tools which plaintiff does not challenge, his remaining value of buildings on both assessment rolls is $4,211, 519. Of this amount however, $366,754 is the estimated value of "yard items", including railroad tracks, sewage system, water service, fire protection, fencing, paving, sidewalks, parking area, steam lines, two 15,000-gallon tanks, two elevated tanks, pump house, transformers and substation, electrical distribution system, and 500,000-gallon concrete reservoir. The assessor computed the value of these items in the same manner as he did the buildings.

Defendants' four value witnesses all place total values of the property listed on the assessment rolls at more than the assessor's values. The assessor and chairman of the board of review insist the values shown on the rolls are conservative.

We have pointed out several times that valuations for tax purposes are not capable of exact ascertainment and cannot be more than approximately correct. Also that the taxpayer's burden is not met by showing merely a difference of opinion between his witnesses and the assessor, unless it is manifest his valuation is grossly excessive and a result of the exercise of the will, not the judgment. If the assessor's action is not arbitrary or capricious or so wholly out of line with actual values as to give rise to the inference he has not properly discharged his duty, the assessment made by him and confirmed by the board of review should not be disturbed. In re Appeal of Dubuque-Wisconsin Bridge Co., 237 Iowa 1314, 1316, 25 N.W.2d 327, 328, and citations; Haubrich v. Johnson, supra, 242 Iowa 1236, 1246-7, 50 N.W.2d 19, 25; Daniels v. Board of Review, supra, 243 Iowa 405, 419, 420, 52 N.W.2d 1, 9.

It is perhaps true the assessor did not give as much consideration as he should have to some of the matters referred to in section 441.13 that affect the values of plaintiff's plant. As before stated, we think this does not entitle plaintiff to relief without a clear showing the assessor's values were inequitable or in excess of actual values. We are satisfied it cannot fairly be said the assessor acted arbitrarily or capriciously. He did his best to exercise honest judgment and arrive at fair values. He made several trips to the plant in connection with the assessment and a deputy spent a week and a half there gathering information concerning it.

Members of the board of review also visited plaintiff's plant and went through a number of buildings the manager and plant engineer wanted them to see. The chairman of the board seems well qualified for his official duties. He testified he concluded the assessment was reasonable and equitable and at a lower rate than that on similar structures of less value.

As stated at the outset, the trial court found plaintiff's assessment inequitable in comparison with similar property and also in excess of actual value. We are agreed there is insufficient evidence to support either conclusion. As previously explained, plaintiff's argument asserts several times there is no similar or comparable property in the taxing district. Plaintiff also repeatedly condemns the trial court's 12% reduction of the assessment as without evidential support. Of course it contends for a much larger reduction mainly on the strength of the testimony of Messrs. Giffels and McKean and other evidence as to the unsuitable character of the plant for plaintiff's purposes.

The Iowa precedents plaintiff seems mainly to rely upon are Call v. Board of Review, supra, 227 Iowa 1116, 290 N.W. 109, and Lincoln J.S.L. Bank v. Board, 227 Iowa 1136, 290 N.W. 94. Nothing we have said here is contrary to the cited decisions. In both of them the board of review offered only the testimony of the assessor. In the Lincoln Bank case it was "admitted that the land is taxed at more than its actual value" (page 1140 of 227 Iowa). See Hanson v. Board, supra, 232 Iowa 390, 395, 4 N.W.2d 384, 387. The Lincoln Bank opinion holds, however, the value of the land was twice that found by the district court. In Call v. Board, supra, we concluded "the only testimony concerning the actual value of the improvements is the testimony of the plaintiff's witnesses" (page 1123 of 227 Iowa). Accordingly we reduced the value of the dwelling to the amount shown by such testimony.

Our decision in Trustees of Estate of Flynn v. Board of Review, 226 Iowa 1353, 286 N.W. 483, also cited by plaintiff, is largely based on the assessor's failure, as to the property in question, to comply with a recommendation of the state board of assessment and review (now state tax commission) that a 20% reduction be made on values as fixed for a previous year, when

other similar properties were given the full benefit of such reduction. Plaintiff's other citations need not be analyzed.

After due consideration of all contentions urged we hold the assessments made by the assessor and confirmed by the board of review should be upheld. Accordingly the decree of the district court is—Affirmed on plaintiff's appeal; reversed on defendants' appeal.

THOMPSON, C. J., and BLISS, OLIVER, WENNERSTRUM, HAYS, and PETERSON, JJ., concur.

### SUPPLEMENT TO OPINION

GARFIELD, J.—In its petition for rehearing plaintiff-appellant argues with much vigor a contention we desire to answer. Of course the contention should have been made upon the original submission and not withheld until the petition for rehearing.

Division I of our opinion points out the trial court erred in refusing to compel plaintiff to disclose the cost or valuation it had placed upon its machinery, jigs, dies and tools by sustaining plaintiff's objections to certain interrogatories and paragraphs of defendants' application for production of books and papers. Before the trial defendants applied to us, under rule 332(a), Rules of Civil Procedure, to grant an appeal from these interlocutory rulings in advance of final judgment. By our denial of this application plaintiff, in its petition for rehearing, strenuously contends we held these rulings were right and established the law of the case accordingly, which our opinion repudiates.

The argument is wholly without merit. Our refusal to grant an appeal from these interlocutory rulings in advance of final judgment was not an affirmance of the rulings. It was merely a refusal, upon considerations we deemed sufficient, to review the rulings in advance of final judgment. Had we granted the appeal of course we might have affirmed the rulings or reversed them. Then and not until then would there have been an adjudication as to their correctness.

Rule 331(b), Rules of Civil Procedure, provides that on appeal from the final judgment interlocutory rulings may be assigned as error. Frequently this is considered a persuasive

reason why an appeal in advance of final judgment, under rule 332(a), should not be granted and the expense and delay incident thereto should be avoided. Defendants-cross-appellants were entitled to urge the interlocutory rulings herein referred to as error although they asked for and were denied permission to appeal therefrom.

With this supplement to our opinion, plaintiff-appellant's petition for rehearing is overruled.

THOMPSON, C. J., and BLISS, OLIVER, HAYS, and PETERSON, JJ., concur.