### The MAYTAG COMPANY, Appellant,

v.

### Thomas PARTRIDGE, Member and Chairman of the Board of Review of the City of Newton, Iowa, et al., Appellees.

No. 55481.

Supreme Court of Iowa.

Sept. 19, 1973.

Rehearing Denied Dec. 13, 1973.

Murray B. Nelson, Newton, and Herrick, Langdon, Belin & Harris and Jeffrey E. Lamson, Des Moines, for appellant.

Lewis M. Girdner, Newton, for appellees.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves the valuation of a manufacturing plant for property tax purposes.

The former Iowa State Tax Commission disapproved the 1965 property tax valuation of one of The Maytag Company's manufacturing plants in Newton, Iowa. Litigation ensued, which the parties eventually settled. The parties stipulated in their settlement that representatives of the commission would inspect and appraise all industrial property in Newton in 1967 and 1968 and that the city assessor would revalue the properties in 1969. Commission representatives accordingly inspected and appraised Newton industrial property.

Between 1965 and 1969, the legislature substantially altered the definition of assessed value in the taxation of tangible property, by changing to a market value concept. Compare Code 1966, § 441.21, with Code 1971, § 441.21. Also in that period, the legislature reorganized the commission into the Iowa Department of Revenue.

In 1969 the Newton assessor valued Newton industrial property in the light of the commission's appraisal and his own information. Maytag objected to the new valuation of its Plant 2, and on review, the Newton Board of Review reduced the valuation. Maytag appealed to district court, which affirmed the board's reduced valuation. Maytag then appealed to this court.

The parties did not discover any sales of plants comparable to Maytag's Plant 2. Endeavoring to ascertain the value of that plant, they therefore considered the plant's three components—land, buildings, and machinery and equipment (we will call the latter component machinery). The lowest value of the whole plant estimated by Maytag's experts was $11,653,483. The value fixed by the board and shown by its evidence, was $18,848,905. Both sides introduced substantial evidence in support of their valuations.

As we view the case, the principal problems are these: (1) Does the existence of a used machinery market price require that the sales prices approach be used in valuing the machinery, and does the used machinery market price constitute superior evidence of the value of the machinery? (2) Was the assessor's method of valuing the machinery valid? (3) Are industrial properties inside and outside of Newton to be considered here for comparative purposes? (4) Who has the burden of proof? (5) What is the exchange value of the plant?

We begin with the controlling parts of our basic statutes and decisions. Section 441.21 of the Code deals with valuation of real and tangible personal property for property tax purposes. That section provides such property shall be assessed at 27% of "actual" value. It continues:

> The *actual* value of *all* property subject to assessment and taxation shall be the fair and reasonable *market* value of such property. (Italics added.)

The section proceeds to define market value:

> "Market value" is defined as the *fair and reasonable exchange* in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. (Italics added.)

(As to "fair and reasonable exchange" or "exchange value," see 1 Bonbright, Valuation of Property, 44–46 (1937)—"exchange value" or "value in exchange" are terms used by economists to include values reflected by transactions both on organized markets and by occasional sales.)

Next the section tells the assessor how to ascertain the "fair and reasonable exchange" (which we will call exchange value). It authorizes two approaches. The first is the "sales prices" approach:

> Sales prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value.

Then the section authorizes the second or "other factors" approach:

> In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may consider its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.

In sum, in every case the objective sought is the exchange value between voluntary, informed buyers and sellers. That value is ascertained (a) by consideration of sales prices or, if such value cannot thus be readily established, (b) by consideration of other factors which will assist in determining exchange value.

A second statute involved in the case is § 428.22 of the Code:

> Machinery used in manufacturing establishments shall, for the purpose of taxation, be regarded as real estate.

Under this statute, manufacturing machinery "must be deemed real estate, or regarded as such, in its assessment and taxation." Northwestern States Portland Cement Co. v. Board of Review of Mason City, 244 Iowa 720, 728, 58 N.W.2d 15, 20.

The principal decision involved in the case is Tiffany v. County Board of Review in and for Greene County, 188 N.W.2d 343 (Iowa). We there laid down the rule that in valuing improved real estate, an assessor is not to value the land and the improve-

ments separately and then add the two values together. Rather, he is to value the improved real estate as a unit. See also Juhl v. Greene County Board of Review, 188 N.W.2d 351 (Iowa); Markwardt v. County Board of Review in and for Franklin County, 174 N.W.2d 396 (Iowa).

Applying these principles, the law required this assessor first to endeavor to apply the sales prices approach in determining the exchange value of Maytag's Plant 2—that is, from sales prices of comparable plants. But since neither the assessor nor Maytag discovered such sales, exchange value could not be "readily established" in that manner. The assessor thus had to turn to the second approach of other factors. This permitted him to consider values of components of the plant —not simply to be added together but for their bearing on the value of the plant as a whole. But since exchange value was the goal, the assessor's task was still to estimate the price a buyer and a seller would agree upon—not on the basis of actual sales prices, which were unavailable, but on the basis of an estimated price the plant would probably bring if offered for sale. See State ex rel. IBM Corp. v. Board of Review of Fond du Lac, 231 Wis. 303, 314–315, 285 N.W. 784, 789 ("In assessments involving property of this kind the inquiry should relate to the price that such property would probably bring if offered for sale."); Allen v. Bonded Municipal Corp., 62 R.I. 101, 4 A.2d 249; 1 Bonbright, Valuation of Property, 59–61 (1937).

We come, then, to the specific issues.

I. *Use of Used Machinery Prices.* A major component of the plant is machinery. A major dispute between the parties relates to the valuation of this machinery.

The evidence shows that a number of firms throughout the country deal in used industrial machinery—buying, storing, and selling it—and that a market price exists for such machinery. In this connection Maytag asserts two propositions: first, the existence of a used machinery market price requires that the sales prices approach be used in valuing the machinery here, and second, even if use of the sales prices approach is not required, the used machinery market price is superior proof of the value of this machinery.

■ Maytag's first proposition involves two implicit assumptions. It initially assumes that the sales prices approach is to be applied to a component having a market price although the other factors approach is applicable to the taxable unit of which the component is a part. We find no justification for this assumption in the statute and, indeed, regard it as the antithesis of the Tiffany principle of valuing a taxable unit as a unit.

A case can be put in which the sales prices approach might apply to industrial machinery. The evidence here discloses that Maytag retires machines from time to time when they become worn or outdated. If Maytag disconnected those machines and placed them in its warehouse pending sale, a good claim could be made that they no longer are "used in manufacturing" under § 428.22 and therefore no longer are to be assessed as part of the real estate. A plausible case could be made that they have the exchange value the used machinery market gives them and that the first approach of sales prices must therefore be applied to them. But such are not our facts. We are dealing with machinery which in fact is in use in manufacturing.

■ The other implicit assumption is that the exchange value of machinery installed and operating on the line equals the price of machinery on the used machinery market. This assumption brings us to Maytag's second proposition also—that the used machinery market price constitutes superior evidence of value under the approach of other factors. We will therefore consider this implicit assumption in connection with both propositions.

■ We think this assumption, like the initial one, will not withstand analysis.

While the best uses to which non-agricultural property may be put are to be considered, the rule is that an assessor must also consider conditions existing at the time and the condition of the property in which the owner holds it. Burns v. Herberger, 17 Ariz.App. 462, 498 P.2d 536; Village of Aurora v. Commissioner of Taxation, 217 Minn. 64, 14 N.W.2d 292; Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 89 A.2d 385; 84 C.J.S. Taxation § 410 at 785. This machinery is not in fact on the used machinery market. Considering conditions existing at the time of valuation and the condition of the property in which Maytag holds it, we have here a complete line of machinery, in place and functioning, an integral part of a profitable manufacturing establishment, coordinated into an operating whole by an engineering staff. This court has considered the problem of valuing items of property as inert articles as distinguished from components of an operating enterprise. City of Marion v. Cedar Rapids & M. Ry., 120 Iowa 259, 263–264, 94 N.W. 501, 502. In that case the court stated:

It [a statute] makes specific reference to the physical property, and by implication, at least, limits the power of the assessor to its consideration. But this by no means necessitates the conclusion that the assessor is restricted to a valuation of a mass of worn and depreciated materials, without regard to the fact that they are associated and organized into a completed, valuable, going railway. It is incredible that the legislature intended to require a street railway company to pay taxes, not upon the fair value of its railway as such, but simply upon the basis of what the secondhand material of which its line is composed would be worth if the road were to be dismantled and the worn remnants placed upon the market . . . .

In such structure the materials have become the correlated and appropriate parts of a single income-producing concern, having a value of its own by reason of its organization and use, which may be much more or much less than the original value of the materials entering into its construction.

The United States Supreme Court expressed the same view in Cleveland, C., C. & St. L. Ry. v. Backus, 154 U.S. 439, 445–446, 14 S.Ct. 1122, 1124, 38 L.Ed. 1041, 1046:

The rule of property taxation is that the value of the property is the basis of taxation. It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value. But the value of property results from the use to which it is put and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from such use . . . . It is enough for the state that it finds within its borders property which is of a certain value. *What has caused that value is immaterial.* (Italics added.)

See also Block v. Hirsh, 256 U.S. 135, 165, 41 S.Ct. 458, 463, 65 L.Ed. 865, 875 ("There can be no conception of property aside from its control and use, and upon its use depends its value."); State v. Federal Reserve Bank of Minneapolis, 25 F.Supp. 14 (D.Minn.) (value in use of business building); Huck, The Use of Real Estate, The Appraisal Journ., 190 (April 1965) ("The value of real estate is dependent upon use."); Armstrong, Valuation of Industrial Property, The Appraisal Journ., 35, 213 (Jan. 1953) ("The evaluation of industrial properties cannot be conducted in a vacuum."). And the court said this in Ozette Ry. v. Grays Harbor County, 16 Wash.2d 459, 471, 133 P.2d 983, 988:

These logging railroads are in active operation, with every prospect of steady continuance for a period of at least twelve years. They therefore possess a utility value far in excess of the mere salvage price of their removable parts. In determining the value of an active,

operating logging railroad, it must be considered as a unit and not simply as an aggregation of separate parts, for the value of its separate parts, taken in the aggregate, would not necessarily approximate a true measure of value of all its parts viewed as a single organic machine or plant so to speak.

In the field of eminent domain, we have given similar consideration to the use of property in ascertaining its value. Twin-State Engineering & Chemical Co. v. Iowa State Highway Comm'n, 197 N.W.2d 575 (Iowa); Nidy & Co. v. State, 189 N.W.2d 583 (Iowa); Des Moines Wet Wash Laundry v. Des Moines, 197 Iowa 1082, 198 N.W. 486.

We thus reject the assumption that the value of machinery in use equals the used machinery market price.

But Maytag insists its machinery cannot be considered in the light of present use because of two specific commands in § 441.21: first, property must be valued as property separate from the good will or value of the business, and second, the special value which property has to its owner may not be included.

The first legislative command which Maytag relies on—the property itself, and not good will or the business, is to be valued—involves the distinction between *property* tax statutes and statutes concerning a *business concern* as such. See 1 Bonbright, Valuation of Property, 233–234 (1937). One statute has to do with the value of the physical assets; the other, with the value of those physical assets plus good will and other intangibles.

We have here a statute of the former type, but we think nonetheless that the assessor did not violate the first command when he considered the use to which the tangible property is being put. When an assessor considers the use being made of property, he is merely following the rule that he must consider conditions as they are. He is recognizing the effect of the

use upon the value *of the property itself*. He is not adding on separate items for good will, patents, or personnel. This was the very point involved in the Cedar Rapids Railway case, supra. There the franchise could not be included in the valuation. The railway claimed that in valuing the physical assets as part of a going concern, the assessor necessarily included the value of the franchise because the railway could not operate without it. This court rejected the contention. The franchise had its own value, as did the physical assets in the light of the use being made of them. The court adhered to that view in Lake City Electric Light Co. v. McCrary, 132 Iowa 624, 626–627, 110 N.W. 19, 20:

> Indeed, we think that the existence of the franchise and the fact that the light plant was a going concern instead of a mere aggregation of dead material were matters which the assessor was entitled to consider in appraising the property, and that such valuation is in no manner inconsistent with the general proposition that the franchise as such is not a taxable item of property.

Section 441.21 of the Code expresses the principle again when it directs consideration of "productive and earning capacity" of property.

The principle was applied in the Backus case, supra, but in a different context. There a railway ran in two states. An assessor in one state who could only tax property in his state nonetheless considered the value of the whole railway and apportioned part of the whole value to his state. The railway claimed the assessor could not take cognizance of the value of the railway beyond his own state line. The Court rejected the contention and held the assessor properly valued the assets in his state in the light of their use as part of the whole.

The other legislative command in § 441.21 which Maytag relies on—that the assessor may not consider the special value or use of property to its present owner—

comes into play when sentiment, taste, or other factors, frequently subjective, give property peculiar value or use to its owner that it does not have to others. See 1 Bonbright, Valuation of Property, 472–479 (1937). Thus an heirloom or even a homestead may have special appeal or use to the owner that it would not have to others generally or in the marketplace. A good illustration is Turnley v. Elizabeth, 76 N.J.L. 42, 68 A. 1094. The taxpayer constructed a substantial dwelling containing a number of costly "features and fancies" of personal delight and use to him but adding no value or use to others. In the valuation of the home, the court held that the features and fancies, being of peculiar value to the owner, should not be considered, but that the otherwise costly nature of the home should be.

We have no such situation here. Presumably another competent home appliance manufacturer could step into Maytag's shoes and operate this plant. The Cedar Rapids Railway decision is again directly in point; the railway could be operated by another competent railway organization.

The evidence here does show that this business began as a family concern and that the concern has close ties to Newton. These subjective attachments might cause management to place a greater value on the assets in their Newton location than they would have at that location for others in the appliance industry—for the evidence also shows that Newton is geographically removed from major suppliers and principal markets. Such subjective added value in the mind of management could not be considered in property tax valuation. No indication exists in the evidence, however, that the assessor gave any consideration to such factor. His approach was wholly objective.

Maytag also insists that its expert Goldberg testified the machinery would have the same value on the used machinery market whether in the plant or on the loading dock. Mr. Goldberg did so testify. Close examination of his testimony, however, shows that he was valuing the machinery on the basis of the used machinery market, rather than as an integral part of a successful operating enterprise.

Maytag also cites cases from other jurisdictions which it claims uphold its position. We have examined them, but believe the statutes involved brought about the results. If not, we respectfully decline to follow those cases.

We hold that the sales prices approach does not control valuation of the machinery and that the used machinery market price does not constitute superior evidence of the value of the machinery in use.

II. *Assessor's Method of Valuing Machinery.* Maytag next challenges the method employed by the assessor in his search for the value of the machinery in use. Section 441.21 provides that under the second approach to valuation of property

the assessor may consider its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.

The assessor did not simply list Maytag's machines and assign arbitrary values to them. Behind his method was a great deal of study, at the state level, of the problem of valuing manufacturing machinery.

The evidence shows that in 1965, substantial disparities existed in valuations of industrial machinery in 251 plants throughout Iowa. Some taxpayers reported valuation based on book value, some reported on original cost less depreciation taken for income tax purposes, and some reported on other bases. Using replacement cost as a benchmark against which to measure variations, the disparities in valuations ranged

from a low of 3.9% of such cost to a high of 90%. Willard A. Stewart, an appraiser of extensive training and experience, was brought into the commission to tackle the problem of achieving more genuine and uniform valuations. He reviewed the subject at length, examined methods used in a number of other states, and consulted with assessors and with representatives of industry.

Mr. Stewart proposed to the assessors and industry representatives the possibility of using original cost less depreciation at specified rates, augmented by "trending" —i. e., moving the original cost upward annually in accordance with increased cost of replacing the machines at currently higher prices. The objection to this method was that new higher-priced machines frequently contain improvements not in the machines being valued.

Mr. Stewart then undertook the study of the "Iowa Curves" found in Winfrey, Statistical Analyses of Industrial Property Retirements (Bulletin 125, Engineering Research Institute, Iowa State University, Rev. 1967). These nationally used curves, developed by engineering research, show actual experience in the retirement of machinery, from which probable future retirement of machinery can be forecast. Since the curves are based on actual retirements of machinery, they reflect the various causes for retirements—physical and functional depreciation, obsolescence, productive and earning capacity of the machinery, cost of replacement, and other factors which management would ponder in deciding whether to retire machinery.

▮ After study, Mr. Stewart settled upon Winfrey's $0_3$ curve as the most appropriate one. From that curve Mr. Stewart developed depreciation schedules for three broad categories of machines, those with short, with intermediate, and with long lives. He prepared a publication containing the information, entitled Manufacturer's Classification Guide (Iowa Dep't of

Rev., Property Tax Div., 1969). Under the guide, machinery in use is depreciated to a residual value of 20% of original cost while it remains in use. This is a percentage commonly applied in other states, although some jurisdictions use higher and some use lower percentages for residual value. The object of the guide is to obtain more accurate and uniform valuations. The Newton assessor used the guide in valuing Maytag's machinery.

Maytag objects generally to the use of the guide. But since the machinery is not to be considered in isolation or out of operation, how better could the assessor get at the contribution that the machinery makes to the exchange value of the plant? The guide takes into consideration all the various factors which management weighs in retaining or retiring machines—the same factors a prospective purchaser of a going plant would likely have in mind when viewing machinery. It seems to us that use of the guide as a tool in the valuation process is reasonable.

Maytag then advances several specific objections to the guide, some of which point up necessary reservations in its use. One objection is that computations under the guide are made on original cost, but original cost is not the whole answer to valuation. This objection has some validity, indicating that the guide cannot be applied slavishly. Another objection, closely related, is that a mathematical formula such as a guide cannot be applied without adjustments for conditions in individual plants which bring machinery above or below the norm. This objection too has some merit. While a slide-rule system of valuation would be convenient, the statute clearly contemplates individualized treatment—each plant according to its own exchange value. Application of the guide must thus be tailored to conditions of individual plants. Still another objection is that use of the guide violates the legislative command in § 441.21 that one factor alone may not be used in valuing property

under the second approach. But if the assessor does not apply the guide mechanically and tailors its application to particular conditions, we believe this legislative command is not violated—especially since the $O_3$ curve underlying the guide takes into consideration the numerous causes for retiring machinery.

■ Thus the guide may be used if used as a *guide*. But the assessor must also employ judgment. While Winfrey strongly recommends the curves, he himself states "he does not mean to infer that *expert judgment* should be done away with in favor of pure statistical treatment." Winfrey, Statistical Analyses, supra, p. 9. The assessor must consider the role that the machinery fills as an income-producing factor in the particular enterprise, the nature and condition of the machinery, and other elements which bear on the contribution that the machinery makes to the exchange value of the plant. Moreover, the assessor must continually be mindful that the value of the machinery is not the end in itself and is not simply to be added to the values of the other components of the plant. His quest is analogous to the one for "fair market value" in eminent domain cases, illustrated by State v. Dockery, 300 S.W.2d 444, 451 (Mo.). There the court said:

We are constrained to hold, however, that the portion of defendant's given instruction directing the jury . . . to award defendant damages "in that sum which equals the fair market value of the land, factory building and the said fixed machinery and equipment installed therein" is technically erroneous. The true measure of damages . . . is the value of the property as a whole. Such a value does not *necessarily* amount to the total of the separate and unrelated values of land, structures and fixtures . . . . In some instances structures and fixtures may even detract from the value of the land.

The same thought is expressed thus in 1 Bonbright, Valuation of Property, 76 (1937):

One of the most important but most frequently disregarded truths about value, is that only by a somewhat rare coincidence does the sum of the values of the different parts of an organic whole equal the value of the whole. If the parts are valued as *separated* from the whole, the sum of their values is likely to be far less than the value of the whole.

Finally on this part of the case, Maytag insists that a better indication of value would be the original cost of the machinery less depreciation taken for income tax purposes or the book value of the machinery on the balance sheet. But depreciation taken for income tax purposes may reflect tax saving or tax deferring devices, and "the fair market worth of real estate owned by industrial concerns is seldom, if ever, the same as that indicated by the balance sheet." Armstrong, Valuation of Industrial Property, The Appraisal Journ., 519 (Oct. 1953).

■ We hold, therefore, that the assessor's use of the guide was reasonable. In reviewing the assessor's valuation, however, the board reduced the value of the machinery by 4%, after considering conditions in this particular plant. We believe that the reduction accords with the evidence and gives effect to the reservations in the use of the guide which we have stated.

■ III. *Comparative Valuations.* Maytag claims that consideration should be given to the valuation placed on other plants within Newton and also outside Newton but within the county in which Newton is located. While the exchange value of the plant in question is the objective, to achieve uniformity and avoid discrimination § 441.37(1) of the Code specifies, as one ground for relief against a val-

uation, "[t]hat said assessment is not equitable as compared with assessments of other like property in the taxing district."

(a) As to plants within Newton, Maytag proved that the board applied various rates of functional depreciation. As to machinery specifically, Maytag showed that some firms had higher (and some lower) functional depreciation rates than its own. The rates varied from a low of 0% for the Newton Foundry machinery to a high of 40% for the machinery of News Printing Company. Maytag argues that the variations demonstrate inequity.

The difficulty is that Maytag failed to take the essential second step in its attack based on comparison. Variations in functional depreciation rates were demonstrated, but Maytag also had to prove disparate rates were applied to comparable conditions. As stated in Deere Mfg. Co. v. Zeiner, 247 Iowa 1364, 1375, 78 N.W.2d 527, 534, "In order to show its assessment was inequitable it was necessary for plaintiff to prove similar property in the same county was assessed lower than its plant. There must be some substantial similarity before a basis for comparison is presented." See also Daniels v. Board of Review of Monona County, 243 Iowa 405, 413, 52 N.W.2d 1, 6 ("A taxpayer does not make out a case for reduction of assessment as inequitable until he shows assessments of similar property in the same district or immediate area were assessed lower than his."); Clark v. Lucas County Board of Review, 242 Iowa 80, 90, 44 N.W.2d 748, 754 ("Before a property assessment can be changed because it is inequitable as compared to the valuations of similar and comparable properties in the same district it must first be shown that there are such similar properties."). The statute contains the words "other like property." § 441.37(1).

Maytag's evidence is wholly wanting as to similarity or comparability of the functional depreciation of machinery in the other plants to which different rates were applied. The only evidence on the subject is testimony of the assessor, which shows actual differences in functional depreciation which would not only justify, but require, variations in rates applied.

The board's minutes indicate that it strove to make variations which the facts of individual cases required. We do not fault the board for making adjustments on a plant-wide basis for each of the several plants, rather than by particular machines. We are convinced that the plant-wide basis "averages out" the machinery in a plant and is a reasonable one to use.

Although, as we will hold, the burden of persuasion on the whole case was on the board, we think that the burden of going forward with evidence as to similarity of plants, under Maytag's comparable property attack, was on Maytag. For the distinction between burden of persuasion and burden of going forward, see 9 Wigmore, Evidence, §§ 2485, 2487 (3d ed.); McCormick, Evidence, §§ 336, 338 (2d ed.). Thus Maytag could not mount a successful comparability attack without introducing evidence of comparability, unless it could point to such evidence elsewhere in the record. Proof of comparability is missing here, and the attack fails.

(b) As to plants outside Newton, evidence of comparability is again wanting. We think, however, that this particular attack must fail for another reason as well. Newton constitutes a district for assessment purposes. The assessed value of property in another district cannot be used for comparative purposes, for the Newton assessor and board cannot set or alter those valuations. If a taxpayer shows, for example, that the Newton assessor has valued certain comparable property in Newton lower than the taxpayer's Newton property, the Newton board can ascertain the facts and lower the taxpayer's valuation or

raise the valuation of the comparable property, as the facts require. § 441.35(1). Not so if the property is in another district. The assessor may be doing a poor job there; his valuations may be entirely too low or too high. But the Newton board cannot raise or lower those valuations, and it should not be compelled to match them and bring about a second wrong.

Section 441.47 of the Code provides the remedy for this kind of situation, although not at the hands of taxpayers. That section requires the Iowa Director of Revenue to adjust valuations between counties and provides in addition, "The director shall also adjust the valuations as between each kind or class of property in any city assessed by a city assessor and each kind or class of property in the same county assessed by the county assessor." See 1958 Op.Iowa Att'y Gen. 252.

In support of its claim that property outside Newton may be considered, Maytag relies on the words "taxing district" in § 441.37—valuation not equitable when compared to other like property in the "taxing district." Maytag claims the Newton school district, which extends into the county, is a "taxing district"; hence properties in the school district, but outside of Newton, may be considered for comparability purposes. Maytag cities various uses of the words "taxing district" to support its position.

■ We think that in the context of chapter 441, however, the words "taxing district" mean the district of the assessor and board of review. That chapter deals with property tax assessment and valuation by the assessor and the board, not with levy of taxes. Where the words "taxing district" are used in chapter 441, they clearly have reference to the district of the assessor and board. See §§ 441.19(1), 441.35(2). The chapter refers to school districts, drainage districts, and other districts having power to levy taxes under

their specific names rather than as taxing districts. § 441.42.

The parent section of § 441.37(1) was § 405.22(1) of the Code of 1958, which used the word "city" rather than "taxing district." At that time chapter 405 dealt with city assessors. Later, chapter 405 and chapters 441 and 442, which dealt with other assessors, were brought together in chapter 441, although the separate jurisdictions of city and county assessors were retained. 58 G.A. ch. 291. In the process, the word "city" in § 441.37(1) had to be enlarged to include the county in the case of a county assessor. The words "taxing district" were substituted. 58 G.A. ch. 291, § 37(1). We think the legislature in so doing was referring to the respective jurisdictions of the city and county assessors. Such is the conclusion reached by the Attorney General. 1966 Op.Iowa Att'y Gen. 471. Prior decisions lend credence to this view. Clark v. Lucas County Board of Review, 242 Iowa 80, 90, 44 N.W.2d 748, 754 ("in the same district"); Crary v. Board of Review of Boone, 226 Iowa 1197, 1200, 286 N.W. 428, 429 ("the same assessment district"); Talbott v. City of Des Moines, 218 Iowa 1397, 1403, 257 N.W. 393, 396 ("the same assessment district"). We hold that the assessed value of plants in Jasper County outside of Newton could not be used for comparative purposes.

■ IV. *Burden of Proof.* Maytag is correct in claiming the board has the burden of proof of upholding the assessment. Section 441.21 provides:

The burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable or capricious; however, in protest or appeal proceedings when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor [as reduced by the board, in this case], the burden of proof thereafter shall be upon

the officials or persons seeking to uphold such valuation to be assessed.

Section 441.39 provides that on appeal to district court "there shall be no presumption as to the correctness of the valuation of assessment appealed from." Additionally, under these sections the taxpayer is no longer required to prove, in order to prevail, that more is involved than a difference of opinion or that a grossly excessive valuation was made which resulted from the will rather than the judgment of the assessor. Tiffany v. County Board of Review in and for Greene County, 188 N.W. 2d 343 (Iowa).

Maytag introduced competent evidence by two disinterested witnesses that the exchange value of Plant 2 is less than the value fixed by the board. The burden of persuasion on valuation therefore passed to the board in both the district court and on this de novo appeal. See § 441.39; Rule 334, Rules of Civil Procedure (case is in equity). Like the trial court, we must thus ascertain where the preponderance of the evidence lies on the valuation issue.

### V. *Exchange Value of the Plant.*

We come then to the task of determining the exchange value of Maytag's Plant 2 as shown by a preponderance of the evidence and in accordance with the applicable principles of law—the amount the plant would probably bring if offered for sale in its condition and use on January 1, 1969, between a willing buyer and seller. We take into consideration the values of the three principal components—land, machinery, and buildings—for their bearing on the exchange value of the whole.

The parties have little disagreeement about the value of the land. Under the evidence, we agree with the assessor's valuation there.

As to the machinery, we find Maytag's evidence based on used machinery prices to be of little weight. The board's evidence, on the other hand, is persuasive. The board's adjustment in the assessor's valuation of the machinery reflects the evidence.

We disagree with the assessor's valuation of the buildings. On the plus side, the buildings are extraordinarily well-maintained, and engineers continually study methods of using the structures in most efficient ways. On the minus side, the nature of the Plant 2 buildings limits efficiency. This is not one large building created for the present production of 5,000 appliances daily. The original building was constructed in 1948, and 16 buildings or additions were thereafter put up. The existence of several buildings hampers operations. In addition, some headroom is too low for today's machinery. Functional depreciation thus exists.

The assessor allowed no functional depreciation, but the board adjusted the buildings downward by 15%. We believe that adjustment reflects the evidence.

Applying the second approach of other factors and considering the values of the three components for their bearing on the value of the whole, we conclude that the valuation of the plant fixed by the board and upheld by the trial court should stand. On the evidence we might not find the same exact dollar amount, but valuations are at best approximations. Deere Mfg. Co. v. Zeiner, 247 Iowa 1364, 1377, 78 N. W.2d 527, 535 ("We have pointed out several times that valuations for tax purposes are not capable of exact ascertainment and cannot be more than approximately correct."). We think the valuation by the board and the trial court represents the plant's exchange value. We therefore hold the exchange value of Maytag's Plant 2 on January 1, 1969, to be $18,848,905.

Affirmed.