**MERLE HAY MALL, Appellant,**

v.

**CITY OF DES MOINES BOARD OF REVIEW, Dee Dee Steger, Chairperson, Appellee.**

**Merle Hay MALL, Appellant,**

v.

**POLK COUNTY BOARD OF REVIEW, Appellee.**

No. 95–1906.

Supreme Court of Iowa.

June 18, 1997.

William J. Koehn and Deborah M. Tharnish of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

William R. Stiles of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney, Shindler & Scalise, P.C., Des Moines, for appellee City of Des Moines Board of Review.

David W. Hibbard, Assistant County Attorney, for appellee Polk County Board of Review.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Merle Hay Mall is a shopping center in Polk County, Iowa, located in the cities of Des Moines and Urbandale. Four tracts in the mall (representing only a portion of the mall complex) were assessed for the 1993 and 1994 valuation years. Pursuant to Iowa Code section 441.37 (1993), the mall owner (mall) filed protests of the assessments. Because the tracts were located in separate assessment districts (three in the City of Des Moines district and one in the Polk County district), the mall filed separate protests with the boards of review of Polk County and the City of Des Moines. The boards of review denied relief, and the mall appealed to the district court pursuant to Iowa Code section 441.37. The separate actions were consolidated, and the parties, by agreement, combined the 1993 and 1994 valuation appeals. The district court affirmed the valuations, and the mall appealed. We affirm.

## I. *The Facts.*

The Merle Hay Mall began in 1959 as an open-air shopping center, "anchored" by a Younkers store at one end and a Sears store at the other. Several small stores were built between the two anchors. The mall was one of the first of its kind in the country.

Anchor stores such as Younkers and Sears are the key to establishing a mall because they create sufficient traffic to attract other businesses to that location. In 1965 an office building and movie theater were built, and in 1972 the open-air center, then known as a plaza, was enclosed to become a "mall." An addition to the west followed in 1974, adding two additional anchors, a Montgomery Ward store and a Younkers Store for Homes (now Kohls). The present appeal involves the assessments on the main Younkers store, the small stores located in the mall, the parking ramps, and a large portion of the parking lots. It does not involve the Sears, Montgomery Ward, or Kohls stores.

When the mall began in 1959, its developers were interested in seeking anchors to get the project started. To encourage Younkers to locate there, the owners negotiated a lease, fair in its terms at the time, which has now become problematic for the mall. The rent, currently at $2.23 per square foot plus two percent of any sales exceeding $15,129,-630, is far below the current market for similar leases.

The Younkers rental income to the mall, in fact, is less than what the mall pays in property tax for the Younkers property, and there is no "pass through" provision in the lease to require Younkers to pay the taxes. There is no immediate end in sight for the mall's predicament because the current lease runs until 2034. The mall offered to deed the land to Younkers, at no cost, to ameliorate this problem. Younkers understandably declined.

The mall argues that the district court erred in its assessment of the property because (1) it did not take into account the below-market Younkers lease, (2) it refused to accept the mall's "business enterprise" theory, (3) it overvalued tenant improve-ments, and (4) it failed to value the property on a cost basis.

## II. *The Law.*

This court's review of a tax protest is de novo. *Friendship Haven, Inc. v. Webster County Bd. of Review*, 542 N.W.2d 837, 840 (Iowa 1996); *Boekeloo v. Board of Review*, 529 N.W.2d 275, 276 (Iowa 1995). Although we give weight to the trial court's findings of fact, we are not bound by them. Iowa R.App. P. 14(f)(7).

An appealing property owner has a two-fold burden on appeal. *Heritage Cablevision[ v. Board of Review]*, 457 N.W.2d [594,] 598 [ (Iowa 1990) ]. First, the property owner bears the burden to prove that an assessment is excessive. *Id.;* Iowa Code § 441.21(3) (1993). Second, the appealing party "must establish what the correct valuation should be." *Heritage Cablevision*, 457 N.W.2d at 598; *accord Milroy v. Board of Review*, 226 N.W.2d 814, 818 (Iowa 1975). If the property owner "offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor," the burden of proof shifts to the board of review to uphold the assessed value. Iowa Code § 441.21(3) (1993).

*Boekeloo*, 529 N.W.2d at 276–77.

A property is taxed at its actual value. Iowa Code § 441.21(1)(a). Actual value is defined as the "fair and reasonable market value." Iowa Code § 441.21(1)(b).

*"Market value "* is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value.

*Id.* When the actual sale price and value based on comparable sales are not available,

as in this case, Iowa Code section 441.21(2) provides for alternate means of valuation:

In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may determine the value of the property using the other uniform and recognized appraisal methods, including its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor. The following shall not be taken into consideration: Special value or use value of the property to its present owner, and the good will or value of a business which uses the property as distinguished from the value of the property as property. Upon adoption of uniform rules by the revenue department or succeeding authority covering assessments and valuations of such properties, said valuation on such properties shall be determined in accordance therewith for assessment purposes to assure uniformity, but such rules shall not be inconsistent with or change the foregoing means of determining the actual, market, taxable and assessed values.

### III. *The Below–Market Younkers Lease.*

The mall argues that no "willing buyer" under Iowa Code section 441.21(1)(b) would offer full price for a property, such as the Younkers store, whose tax liability alone exceeded the lease income. The mall argues that the negative effect of the Younkers lease was not given sufficient consideration by the court in applying the income capitalization approach.

The boards of review respond that it would be inequitable to reduce the mall's assessment, as compared to that of other businesses, because of the mall's "poor business acumen" in entering into a long-term lease without a rent escalator or tax pass-through provision. The mall rejoins that the favorable lease to Younkers encouraged the establishment of the mall and thus the building of additional businesses; the result was increased taxable property in the area.

While both arguments have a certain amount of appeal, we need not look beyond the assessment statutes and our cases to determine the effect of a long-term unfavorable lease. First, Iowa Code section 441.21(2) provides that among the factors to be considered in establishing market value is the "production and earning capacity" of the property. It does not mention the actual income from the property. The Younkers lease is some evidence of the property's earning capacity, but it does not set the parameters of it. As the mall concedes, the earning capacity of the property is substantially greater than the amount it presently earns.

In *Oberstein v. Adair County Board of Review,* 318 N.W.2d 817 (Iowa App.1982), our court of appeals addressed an identical question. In that case, the district court had reduced the assessment valuation of a business property on the ground that it was subject to an unfavorable long-term lease, thus, limiting the amount that a buyer would pay for the property. *Oberstein,* 318 N.W.2d at 819. The court of appeals reversed, holding that it is the fair market value of the whole property that is subject to tax, not the value of the lessor's interest in it. As the court noted, taxes on real estate are an in rem claim and not the personal obligation of a party. *Id.*

■ The mall asks that we overrule *Oberstein,* but we decline to do so. We adhere to the holding of that case; both the lessee's and lessor's interests are to be included in the valuation. While the terms of the Younkers lease are unfavorable to the mall owner, they are very favorable to Younkers and therefore proportionately increase the value of its interest in the property. The combined value of the parties' interests thereby remains the same. In valuing property subject to the lease, the rule is that

property subject to a lease is taxed as a whole and measured by the value of the fee. Taxation of the whole is administratively assessed against the owner of the fee and covers the value of the leasehold inter-

est as well as the reversionary interest. The lessor's remedy must lie in appropriate provisions in the lease requiring lessee contribution to the total tax bill.

*Heritage Cablevision,* 457 N.W.2d at 599 (citations omitted).

■ The assessor properly used the objective rental income value of the Younkers store, rather than the actual lease amount, to establish a valuation, and the district court was correct in affirming on that issue.

### IV. *Reduction of Valuation Under Business Enterprise Value Theory.*

Our assessment statute does not allow certain intangibles to be included in the valuation. Iowa Code section 441.21(2) states, in part:

The following shall not be taken into consideration: Special value or use value of the property to its present owner, and the good will or value of a business which uses the property as distinguished from the value of the property as property.

The mall complains that the assessors violated this provision by failing to reduce the valuations under a "business enterprise value" theory. Under this theory, the value of a property such as a mall necessarily includes certain intangibles such as the worth of the business organization, management, the assembled work force, working capital, and legal rights such as trade names, franchises, and agreements, that have been assembled to make a business a viable entity.

These intangible values, according to the mall, must be excluded from the valuation. The boards of review respond that rental value always includes compensation for the labor, capital, and entrepreneurship of the owners, as well as the "business venture" components.

The mall argues that we have in effect recognized the business enterprise value theory in the valuation of cable television businesses. *See Post–Newsweek Cable, Inc. v. Board of Review,* 497 N.W.2d 810 (Iowa 1993); *Heritage Cablevision,* 457 N.W.2d 594. These cases held that a cable television franchise contains significant intangible components that cannot be taxed. *Post–News-*

*week,* 497 N.W.2d at 817; *Heritage Cablevision,* 457 N.W.2d at 599.

■ The prohibition of section 441.21(2) against including *specified* intangibles (special value or use value of the property to its present owner and the goodwill or value using the property) does not require an assessor to disregard *all* intangibles. We said in *Post–Newsweek:*

While real property and tangible personal property are assessable and taxable as real estate, intangible property is not. Iowa Code § 441.21(1)(a) (assessable property includes "all real and *tangible* personal property subject to taxation") (emphasis added); *Heritage Cablevision,* 457 N.W.2d at 598. Although intangible property is not to be separately valued and assessed, the assessor can—except for intangibles listed in Iowa Code section 441.21(2)—*consider* intangibles in arriving at the actual value of the taxable property. Iowa Code section 441.21(2) is clear on this point because it authorizes the assessor to consider "all other factors which would assist in determining the fair and reasonable market value of the property." Iowa Code § 441.21(2). Section 441.21(2), however, expressly *prohibits* the assessor from considering the following intangibles under *any* valuation methodology: "[s]pecial value or use value of the property to its present owner, and the good will or value of a business which uses the property as distinguished from the value of the property as property." Iowa Code § 441.21(2); *Heritage Cablevision,* 457 N.W.2d at 599.

497 N.W.2d at 814.

In *Heritage Cablevision* we held that the valuation of a cable company's *taxable assets* could not include certain intangibles that make up a cable *system,* such as the franchise to operate the cable system, an established customer base, and experienced personnel. *Heritage Cablevision,* 457 N.W.2d at 598–99; *cf. Post–Newsweek,* 497 N.W.2d at 817 (rejecting use of income approach because it included intangibles).

The mall attempts to analogize these cable television cases with the present case, claiming that the value of a mall includes similar

intangibles. These intangibles include the assembled work force, name recognition, and the ability to attract anchors for the mall. These components, collectively, are characterized by the mall as business enterprise value.

In *State ex rel. N/S Associates v. Board of Review,* 164 Wis.2d 31, 473 N.W.2d 554 (App. 1991), the Wisconsin Court of Appeals reviewed an assessment of a shopping mall. The assessor relied on the comparable sales approach. Like the present case, the owner in *N/S Associates* argued that the fact the replacement cost approach yielded a much lower assessment than the values set by the assessors proved that the mall had considerable intangible value. *N/S Assocs.,* 473 N.W.2d at 562. The owner assigned this intangible value to business enterprise value. *Id.* The court rejected this business enterprise value theory, relying on two rationales: (1) the fact that the comparable sales approach yielded a much higher assessment is explained by the location of the mall; and (2) the

> mall's *raison être*—namely, the leasing of space to tenants and related activities such as trash disposal, baby stroller rentals, etc.—is a transferrable value that is inextricably intertwined with the land and "all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto" . . . .

*Id.* at 563 (quoting Wis. Stat. § 70.03). In *Waste Management v. Kenosha County Board of Review,* 177 Wis.2d 257, 501 N.W.2d 883 (App.1993), *aff'd,* 184 Wis.2d 541, 516 N.W.2d 695 (1994), the court used the same rationale to reject the business value theory of an owner of a landfill.

In both of these cases, the Wisconsin Court of Appeals was careful to distinguish Iowa's cable television cases. *Waste Management* states:

> [T]he *N/S Associates* court was easily able to distinguish a foreign jurisdiction [Iowa] case where a cable television franchise's business value was found to have been improperly included in an assessment. Obviously, the success or failure of a cable television franchise had nothing to do with the land on which the franchise sat.

501 N.W.2d at 887 (citing *N/S Assocs.,* 473 N.W.2d at 563).

■ We agree that the cable television cases must be distinguished. While certain intangibles necessarily add to the value of a mall, this fact alone does not make the valuation suspect. Unless consideration of the intangibles is prohibited by section 441.21(2), *i.e.,* special use values and good will, intangibles may be considered in valuing the real estate with which they are associated. *See Post–Newsweek,* 497 N.W.2d at 814.

■ There is another reason to reject the mall's business enterprise value theory. Iowa Code section 441.21(2) requires that any valuation methods used must be "uniform and recognized appraisal methods." The business enterprise value theory is not a generally recognized appraisal method.

It is undisputed that this method was designed in the late 1980s by a group of shopping mall owners in cooperation with real estate appraisers and real estate professors in a group called "SCAN" (shopping center assessment network). The need for such a project, according to some evidence, was exacerbated by a dramatic rise in the sale prices of shopping malls.

The boards of review argue that this methodology is inconsistent with Iowa's statutory scheme because it strips labor, capital, and entrepreneurial components from the mall's value. It thus removes virtually all components of value except the value of the land and buildings. If this were consistent with the statutory scheme, they argue, the legislature would simply have provided that the sole means of valuation would be the cost method. We believe there is merit in this argument.

Further, the business enterprise value concept seems to be used almost exclusively in tax assessment cases; it is not used in all mall appraisals. Significantly, one appraiser who had used the theory several times in tax assessment cases testified that he had never used it when a mall requested an appraisal for the purpose of obtaining a mortgage loan. Apparently, no assessor in Iowa applies this

theory, and there is no uniformly accepted methodology to do so.

The boards of review and the district court correctly refused to apply the business enterprise value theory.

## V. *Assessment of Tenant Improvements.*

The mall complains that the improvements furnished by its tenants, valued at $3,600,000, should not have been included in the assessment. The reason is that these improvements add only special value or use value to the property and that they are of no use to succeeding tenants. *See* Iowa Code § 441.21(2). One of the mall's witnesses testified that a potential buyer of the mall would not pay anything for tenant improvements, partly because remodeling is "a frequent and continued part of shopping center life."

In *Ruan Center Corp. v. Board of Review,* 297 N.W.2d 538 (Iowa 1980), tenants made improvements that the building's owner argued were special-use improvements and therefore not subject to inclusion in the assessment. One tenant had installed a special earthquake-proof floor and added ventilation for its computers. Other tenants added paneling and different carpeting. A bank installed a vault.

Despite the fairly unique nature of some of these improvements, and in the face of the owner's argument that they were special-use items, we concluded in *Ruan* that the improvements increased the value of the building and were not special-use improvements under section 441.21(2). *Ruan,* 297 N.W.2d at 541. In *Ruan* we relied on the rule that all real estate is generally assessed and taxed to the owner unless the tenant and owner take steps to make other arrangements. These could include assessment of the value of the improvements to the tenant under Iowa Code section 441.4 or, of course, a tax pass-through provision in the lease. We noted in *Ruan* the practical problems of an assessor, in the absence of some indication from the parties, having to decide which party made the improvements. We said:

> As a general rule, property that is leased is listed by, and taxed to, the lessor. § 428.1(6), The Code 1975. If a tenant

improves the real estate, by either building a new structure or adding on to an existing structure, the tenant can be taxed after listing the property. *Id.* § 428.4. This statutory scheme puts the burden on the taxpayers, rather than the assessor, to decide who is going to pay taxes on real property that has been improved by someone other than the owner. It relieves the assessor of the burden of investigating whether a tenant or lessor improved the property. In this case, therefore, the assessor properly assessed taxes on the improvements by tenants to Ruan [the owner].

*Ruan,* 297 N.W.2d at 541.

In *Ruan* we applied a narrow interpretation of the special-use exclusion, stating that it is limited to "situations where factors, frequently subjective, give value that the property does not have to others." The improvements to the building in *Ruan,* we concluded, could be sold to and used by the next tenant, and the owner could conceivably charge rent to the next tenant for the improvements. *Id.* at 541.

In *Maytag Co. v. Partridge,* 210 N.W.2d 584 (Iowa 1973), the taxpayer owned a home appliance manufacturing business, and much of its property was limited to that purpose. The owner sought exclusion of these improvements as special-use items. We noted that this exclusion applied "when sentiment, taste, or other factors, frequently subjective, give property peculiar value or use to its owner that it does not have to others." *Maytag,* 210 N.W.2d at 591. We held that home appliance manufacturing equipment was not such property because "[p]resumably another competent home appliance manufacturer could step into Maytag's shoes and operate this plant." *Id.*

■ We agree with the district court that the tenant improvements were properly included in the valuation because: (1) the improvements presumably added value to the property, *Ruan,* 297 N.W.2d at 541; (2) the lessor and lessee had an obligation to fix the liability for the property taxes, and they failed to do so in this case, *id.;* and (3) the tenant improvements might well have value

both to the present mall owner and to future tenants. *Id.* at 541–42; *Maytag,* 210 N.W.2d at 591.

### VI. *Use of Both the Cost Approach and the Income Approach in the Valuation.*

The mall's last argument concerns the court's reliance on both the income and cost methods of appraisal. Iowa Code section 441.21(2) allows for other appraisal methods to be used when the actual sale price or comparable sale values cannot be readily established, "but the actual value shall not be determined by the use of only one such factor." Iowa Code § 441.21(2). The assessors in this case used both the income and cost methods.

The mall argues that problems with the income approach, specifically the valuation of the long-term, below-market lease of Younkers and the quantification of intangibles such as business enterprise value, make the cost method the only reliable approach. *See Post–Newsweek,* 497 N.W.2d at 818 (finding the cost approach more reliable in the valuation of property of a cable television company). As discussed above, the district court appropriately dealt with both of those issues. For reasons already discussed, the objective income approach in this case is sufficiently reliable to be used, and the district court properly followed the statutory mandate in using it as one approach to valuation.

The mall also argues that the district court should not have limited the testimony of Merle Hay's primary cost-approach witness, Frank Sedlacek, who is one of Merle Hay's main contractors. Merle Hay contends that Sedlacek offered the most accurate cost factors because they were site-specific to the mall. The court limited the use of Sedlacek's testimony to evaluating the cost approach used by other witnesses. We believe this was appropriate given that Sedlacek failed to include many elements in his valuation, such as the values of the office building and land, the indirect or soft costs, and improvements. In addition, this witness had a substantial ongoing business relationship with the mall, and the court was there-fore justified in discounting his opinion accordingly.

We find no error in the assessments challenged here, and we therefore affirm.

**AFFIRMED.**