# IN THE COURT OF APPEALS OF IOWA

No. 21-1018
Filed February 8, 2023

**WALMART, INC. and SAM'S REAL ESTATE BUSINESS TRUST,**
     Plaintiffs-Appellees,

**vs.**

**CITY OF DAVENPORT IOWA BOARD OF REVIEW,**
     Defendant-Appellant.
_____

**WALMART, INC. and WALMART REAL ESTATE BUSINESS TRUST,**
     Plaintiffs-Appellees,

**vs.**

**CITY OF DAVENPORT IOWA BOARD OF REVIEW,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Tom Reidel, Judge.

The City of Davenport Board of Review appeals the district court decision finding the Board's appraisal of plaintiffs' property was excessive. **AFFIRMED.**

Theodore W. Craig of Dickinson, Mackaman, Tyler & Hagen, Des Moines, for appellant.

Paul D. Burns, Matthew G. Barnd, and Paul J. Esker of Bradley & Riley PC, Iowa City, for appellees.

Considered by Bower, C.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

The City of Davenport Board of Review (Board) appeals the district court decision finding the appraisals of two Walmart stores and a Sam's Club were excessive. The court found the businesses met their burden to present competent evidence to show the appraisals of the properties for property tax purposes were excessive. The court then determined the Board did not meet its burden to uphold the appraisals. We affirm the district court's decision.

## I.       Standard of Review

We review a district court's decision in tax protest cases de novo. *Nationwide Mut. Ins. Co. v. Polk Cnty. Bd. of Rev.*, 983 N.W.2d 37, 42, (Iowa 2022). "[We] give[ ] weight to the fact findings of the district court, but [we are] not bound by them." Iowa R. App. P. 6.904(3)(g); *accord Boekeloo v. Bd. of Rev.*, 529 N.W.2d 275, 276 (Iowa 1995). But we are "especially deferential to the court's assessment of the credibility of witnesses." *Wellmark, Inc. v. Polk Cnty. Bd. of Rev.*, 875 N.W.2d 667, 672 (Iowa 2016).

## II.      Legal Background

A tax payer may protest the assessed value of property. Iowa Code § 441.37(1) (2019); *Soifer v. Floyd Cnty. Bd. of Rev.*, 759 N.W.2d 775, 779 (Iowa 2009). Iowa Code section 441.21(3)(b)(2) states:

> For assessment years beginning on or after January 1, 2018, the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable, or capricious. However, in protest or appeal proceedings when the complainant offers competent evidence that the market value of the property is different than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed.

Section 441.21(1)(a) provides,"All property subject to taxation shall be valued at its actual value . . . ." In general, "The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property . . . ." Iowa Code § 441.21(1)(b)(1); *accord Soifer*, 759 N.W.2d at 778 (noting the actual value of property is its "fair and reasonable market value").

The legislature has defined "market value" "as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property." Iowa Code § 441.21(1)(b)(1); *accord Nationwide*, 983 N.W.2d at 41. Finding the fair market value of property through comparable sales is the "preferred method" of valuation.[1] *Wellmark*, 875 N.W.2d at 679; *Compiano v. Bd. of Rev. of Polk Cnty.*, 771 N.W.2d 392, 398 (Iowa 2009) ("The legislative scheme for the valuation of real estate for purposes of assessing taxes begins with the market-value approach, based on 'comparable sales of other properties.'" (citation omitted)).

### III.    Factual Background

This appeal presents a challenge involving combined appeals of three stores in Davenport—a Walmart on West Kimberly (Kimberly Walmart), a Walmart on Elmore Avenue (Elmore Walmart), and a Sam's Club on Elmore. The stores

---

[1] In "circumstances where the market value of taxable property [can] not be readily established," an assessor may use "an alternative approach to establishing actual value." *Wellmark*, 875 N.W.2d at 679. "Despite the Code's preference for the sales approach, valuations using comparable sales alone are not always appropriate." *Nationwide*, 983 N.W.2d at 41. The parties agreed the use of an alternative approach, such as the cost approach or the income approach, was unnecessary in this case.

were in operation. The values for each property as set by the Davenport City Assessor are listed in the below table:

| Property | Address | 2019 Assessment | Scott Co. Case |
|----------|---------|-----------------|----------------|
| Walmart | 5811 Elmore Ave. | $15,325,000 | CVCV299542 |
| Walmart | 3101 West Kimberly | $15,125,000 | CVCV200543 |
| Sam's Club | 3887 Elmore Ave. | $8,503,940 | CVCV299544 |

Walmart, Inc., Sam's Real Estate Business Trust, and Walmart Real Estate Business Trust[2] challenged the amount of the assessments to the Board. The Board upheld the amount of the assessments.

Walmart, Inc. appealed the Board's decision to the district court. At the trial, held in April 2021, Walmart, Inc. presented the testimony of Chris Jenkins, the director of CBRE Valuation & Advisory Services in West Des Moines.[3] Jenkins appraised each property as a single-tenant retail store. He stated that he considered the current use of the properties as single-tenant retail stores, rather than the highest and best use. Jenkins used only the sales comparison approach; he did not use the cost or income approaches. Jenkins noted "there's been a decline in the big box retail market nationally. E-commerce, things like Amazon and other online retailers, have really had a significant impact on the demand for these big box retail stores."

Jenkins looked at eight comparable sales. He stated he tried to avoid sales of vacant stores. He used some sales of vacant stores but also made some

---

[2] We will refer to these entities together as Walmart, Inc.
[3] Jenkins testified that his company had an ongoing relationship with Walmart, Inc. to provide appraisals.

upward adjustments of the sale price to arrive at a comparable sale price, dependent on the length of the vacancy. Jenkins asserted there was no prohibition on using vacant stores for purposes of comparable sales. Jenkins valued the Kimberly Walmart at $11,500,000; the Elmore Walmart at $11,900,000; and the Sam's Club at $6,900,000.

Walmart, Inc. also presented the testimony of Gerald Maier, who was a partner at Mainland Valuation Services in Lenexa, Kansas. Maier stated that he valued the property with the assumption that Walmart, Inc. would vacate the property at the time of sale, but he did not value the property as if it were vacant over a long period of time. He stated that some buyers might want a vacant property and that vacancy did not always mean an adverse impact on price. Maier stated that it was not always necessary to adjust the value of vacant stores.

Maier testified that the sales comparison method was the best. He looked at several comparable sales. Maier stated the value of the Kimberly Walmart was $10,600,000. He valued the Elmore Walmart at $10,660,000. The Sam's Club was valued at $6,100,000.

Ranney Ramsey testified for the Board. Ramsey is a self-employed appraiser in Iowa. He stated the highest and best use of the property was its current use as a retail store. For comparable sales, he looked at properties that "ha[d] a use similar to the subject property, meaning that it's a large regional or national retailer that's buying the property to use it on a day-to-day basis as the subject property is." Ramsey stated that he tried to avoid using vacant properties for comparable sales but did use some vacant stores in his comparables.

Based on the sales comparison approach, Ramsey found a value of $15,550,000 for the Kimberly Walmart. For the Elmore Walmart, he found a value of $16,500,000. He determined the Sam's Club had a value of $9,400,000. Ramsey stated the values could be determined by looking at the sales comparison approach, so although he calculated the values for the properties using the cost and income approaches, he did not use those values.

In a ruling filed on June 25, 2021, the district court found Walmart, Inc. "provided competent evidence that the market value of the property was different from the market value determined by the assessor." The burden of proof then shifted to the Board to uphold the assessments. See Iowa Code § 441.21(3)(b)(2). The court stated there was no prohibition against using vacant stores for the comparison sales approach, noting, "Jenkins and Ramsey both used a combination of vacant and leased fee properties while Maier used vacant and then a hypothetical leased fee valuation."

The court found there were mistakes in Ramsey's appraisal that "ma[d]e it of nominal value to the court" and led to a finding that it does not constitute competent evidence. The court highlighted the lack of comparable sales in Ramey's report from 2017 or 2018, despite evidence that sales existed in those two years. The district court also highlighted Ramsey's acknowledgment that several of his comparable sales were not as good as they could be. The court concluded "the appraisal of Jenkins is the most competent evidence concerning the market value of the respective properties." The court found that while there were errors in Jenkins's report, the errors were minimal and had little impact on the overall assessments.

The court did not rely on Maier's assessments, determining his appraisals "could not carry the day though as Iowa neither requires all vacant properties or all leased properties." The court stated Maier's appraisals did not value the properly correctly at current use. The court noted Maier's assessments supported Jenkins's assessments.

The court determined the value of the Kimberly Walmart was $11,500,000; the Elmore Walmart was $11,900,000; and the Sam's Club was $6,900,000. The Board appealed the court's ruling.

## IV.     Status of Property

The district court found Walmart, Inc. presented the evidence of witnesses, Jenkins and Maier, to support its claim that the assessments were excessive. *See id.* The Board disputes this finding, claiming Jenkins used a faulty methodology by valuing the properties on the premise Walmart would be vacating the properties and a new entity would move in. The Board asserts the properties should be valued based on their current use, which is as a going concern. *See Riso v. Pottawattamie Bd. of Rev.*, 362 N.W.2d 513, 517 (Iowa 1985) ("The assessor was entitled to consider the use of the property as a going concern.").

As for the burden shifting argument presented by the Board, we recognize that our supreme court recently found that this court grafted too rigid of a standard in interpreting section 441.21 to determine that the Board's experts failed to present competent evidence. *See Nationwide Mut. Ins.*, 983 N.W.2d at 42. Here, Walmart presented the testimony of witnesses that the market value of the property was less than the market value determined by the assessor. So we agree with the

district court that the burden shifted to the board to uphold the valuation assessed. *See* Iowa Code § 441.21(3)(b)(2).

The Board argues this case as decided by the district court "provides a foothold for the 'dark store'" theory that has been rejected by Iowa Courts. This issue was recently discussed in *Lowe's Home Centers, LLC v. Iowa Property Assessment Appeal Board*, where the property owner claimed its property should be valued as if it were vacant. No. 20-0764, 2021 WL 610105, at *1 (Iowa Ct. App. Feb. 17, 2021). The property owner's arguments were rejected because the market value of property should be determined based on the current use of the property. *Id.* at *4. The court stated, "an assessor must . . . consider conditions existing at the time and the condition of the property in which the owner holds it." *Id.* at *5 (ellipsis in original) (quoting *Maytag Co. v. Partridge*, 210 N.W.2d 584, 589 (Iowa 1973)). Additionally, "we reject[ed] Lowe's contention that a fee simple interest must be valued as vacant. Neither section 441.21 nor case law imposes a vacancy requirement in the fee simple valuation context." *Id.* at *5; *see also Lowe's Home Ctrs., LLC v. Iowa Prop. Assessment Appeal Bd.*, No. 20-0623, 2021 WL 1399762, at *2 (Iowa Ct. App. Apr. 4, 2021) (finding property should be appraised at its current use).

While property should not be valued as if it were vacant rather than as a going concern, the definition of "market value" requires a valuation based on an assumption the property was sold by a willing seller to a willing buyer. *See* Iowa Code § 441.21(1)(b)(1). "[T]he proper measure of value is what the property would bring if sold in fee simple free and clear of any leases." *I.C.M. Realty v. Woodward*, 433 N.W.2d 760, 762 (Iowa Ct. App. 1988).

If the property is sold, one party would have to move out and another party move in. A minimal period of vacancy during an exchange of ownership is different than a long-term vacancy, which can also be described as a dark property. *See Lowe's Home Ctrs.*, 2021 WL 610105, at \*1 (distinguishing between property that was dark or vacant and property that was occupied). Jenkins explained:

> So if an owner-user owned a store and sold it to another owner-user, at some point that store has to be vacant. One tenant— the owner has to move out and the other owner has to move in, so it's vacant. Maybe it's one day, maybe it's a month, but it has to be vacant at some point. But that property was sold, the fee simple interest was sold, and the vacancy is not a factor.
>
> That's different than a store, maybe, that a tenant or an owner leaves, it sits vacant for two or three or four years, and then is sold to another tenant or an investor. That vacancy during that two or three or four years, it would impact what sale price is paid for that property. So I think they're very different situations.

We conclude Jenkins did not improperly value the properties as if they were vacant over time, or were dark properties. He valued the properties based on their current use, as ongoing businesses.[4] His recognition that there could be a short period of vacancy while one owner moved out and another owner moved in does not invalidate his valuations.

## V. Comparable Sales

**A.** The Board contends that Jenkins's use of closing or vacant stores as comparable sales for determining the value of the two Walmarts and the Sam's

---

[4] "[U]nless prohibited under Iowa Code section 441.21(1) (1993), intangibles may be considered in valuing the real estate with which they are associated." *Wellmark*, 875 N.W.2d at 681 (citing *Merle Hay Mall v. City of Des Moines*, 564 N.W.2d 419, 424 (Iowa 1997)). "Special value or use value of the property to its present owner, and the good-will or value of a business which uses the property as distinguished from the value of the property as property," should not be considered in an assessment. Iowa Code § 441.21(2) (2019).

Club violated Iowa law. The Board claims Jenkins should have used only operating stores or going concerns for comparisons. It asserts Jenkins did not capture the going concern value of the properties used as comparable sales.

The preferred method of valuation is to find the fair market value of property through comparable sales. *Wellmark*, 875 N.W.2d at 679. "The legislative scheme for the valuation of real estate for purposes of assessing taxes begins with the market-value approach, based on 'comparable sales of other properties.'" *Compiano*, 771 N.W.2d at 398 (citation omitted).

"To determine whether other properties are sufficiently comparable to be used as a basis for ascertaining market value under the comparable-sales approach, we have adopted the rule that the conditions with respect to the other land must be 'similar' to the property being assessed." *Soifer*, 759 N.W.2d at 783. Factors to be considered are "[s]ize, use, location and character." *Id.* (alteration in original) (citation omitted). Vacant properties can be used as comparable sales if suitable adjustments are made. *See Hy-Vee Food Stores, Inc. v. Carroll Cnty. Bd. of Rev.*, No. 12-1526, 2013 WL 5498137, at *3 (Iowa Ct. App. Oct. 2, 2013) (declining to discredit an appraisal that made upward adjustments based on the vacancy of property).

"Whether other property is sufficiently similar and its sale sufficiently normal to be considered on the question of value is left to the sound discretion of the trial court." *Soifer*, 759 N.W.2d at 783; *see also Reemark Props., LLC v. City of Clinton Bd. of Rev.*, No. 12-0118, 2012 WL 5954525, at *2 (Iowa Ct. App. Nov. 29, 2012). "Much must be left to the sound discretion of the trial court in determining whether the other properties and conditions surrounding sale thereof are sufficiently similar

so evidence of such sales is admissible" as comparable sales. *Yoder v. Iowa Power & Light Co.*, 215 N.W.2d 328, 332 (Iowa 1974) (citation omitted).

Concerning the difference in expert opinions about the valuation of property, courts have stated:

> The variable utilized in the methodology as applied, selection of comparable sales, adjustments to value, and approach relied upon by all appraisers, simply reaffirms the principle that appraisal is not an exact science, is a subjective determination, and in final form, the exercise of professional judgment by highly qualified and skilled individuals who disagree.

*Gen. Elec. Co. v. Carroll Cnty. Bd. of Rev.*, No. 98-2288, 2000 WL 700265, at *6 (Iowa Ct. App. May 31, 2000) (quoting *Sears, Robuck & Co. v. Siren,* 484 N.W.2d 616, 617 (Iowa Ct. App.1992)).

The district court found that although *Lowe's Home Centers*, "held that a fee simple interest is not required to be valued as vacant, the court did not hold that an appraiser is prohibited from using vacant sales in the comparison sales approach." *See* 2021 WL 1399762, at *2. The court noted that Jenkins, Maier, and Ramsey all used vacant properties as comparable sales. We conclude the district court did not abuse its discretion in finding that vacant properties could be used as comparable sales, provided suitable adjustments were made to take into account the status of the property. *See Hy-Vee Food Stores*, 2013 WL 5498137, at *3 (stating experts for both parties used vacant properties in their comparable sales analysis).

**B.** Jenkins used some properties subject to leases for comparable sales. The Board challenges the adjustments he made to the values of these

properties based on the leases. The Board also disputes whether the sales are comparable.

In looking at comparable sales, one factor to consider is whether the property is subject to a long-term lease, which would bind the new owner of the property. A long-term lease may cloud the comparability of a sale because a buyer may be willing to pay more for a property with an advantageous lease than an identical property with a disadvantageous lease. *See Wellmark*, 875 N.W.2d at 682 (stating an expert's "comparable sales involved property subject to a long-term lease, thus clouding comparability and raising the question of whether the buyer was interested in the property or the income stream generated by an advantageous lease").

Where the property is subject to a lease, an appraiser may make an adjustment to reflect the effect of the lease on the value of the property. *See Soifer*, 759 N.W.2d at 783 ("When sales of other properties are admitted, the market value of the assessed property must be adjusted to account for differences between the comparable property and the assessed property to the extent any differences would distort the market value of the assessed property in the absence of such adjustments."); *Security Mut. Ins. Ass'n of Iowa v. Bd. of Rev. of City of Ft. Dodge*, 467 N.W.2d 301, 308 (Iowa Ct. App. 1991) (finding there was "an appropriate adjustment to the contract price to reflect the value of the lease-back option"); *I.C.M. Realty*, 433 N.W.2d at 762 (noting that while property should be valued as if free and clear of any leases, the evidence of leases is a factor that may be used to determine the value of the property without the leases); *Oberstein v. Adair Cnty. Bd. of Rev.*, 318 N.W.2d 817, 821 (Iowa Ct. App. 1982) (finding a sale price could

be adjusted to determine the market value of a property as if it were not subject to a lease); *but see Merle Hay Mall*, 564 N.W.2d at 422 (finding a property should not have a reduced assessment value because it was subject to an unfavorable long-term lease).

Jenkins's report states,

> We have selected some sales of similar stores which do have leases in place. However, some of the leases have relatively short terms remaining which minimizes the impact on the sale price as it would move closer to the fee simple value of the real estate only as the lease nears expiration. We have also included a retail store in Iowa with a long term remaining on the lease although adjustment is required for the additional value of the lease in place. This sale is included due to the large size of the improvements similar to the subject and the location in Iowa. Two of the sales of Walmart stores also require adjustment due to the longer term leases in place of 10 to 14 years. The buyer for this type of property and the price paid differ significantly from the buyer and price paid for fee simple interest in the property to other users than Walmart which is what is required in valuation for assessment appeal.

Jenkins testified he considered property subject to a lease for comparable sales "and possibly ma[d]e adjustments to eliminate any impact of the lease on the price that was paid."

The district court found,

> The statutory scheme allows for leased fee sales to be utilized, as supported by the *Lowe's* decision,[5] but does require that the value of the lease be adjusted out in arriving at the market value. This is consistent with both the statutory scheme and Iowa case law.

As noted above, the issue of whether other property is sufficiently similar to be considered a comparable sale "is left to the sound discretion of the trial court." *Soifer*, 759 N.W.2d at 783. We determine the district court did not abuse its

---

[5] *Lowe's Home Ctrs.*, 2021 WL 1399762, at *1 n.1 ("Iowa's case law indicates that an existing lease can serve as some evidence of the property's value.").

discretion by considering the comparable sales relied on by Jenkins, which used adjusted values to account for leases on some properties.

**C.**    Finally, the Board asserts that Maier's use of only properties vacant or with hypothetically leased sales violated Iowa law.  The district court stated, "Maier's appraisals cannot carry the day though as Iowa law neither requires all vacant properties or all leased properties.  An averaging of his two values though does support the valuations by Jenkins."  The district court did not rely on Maier's appraisals and recognized they did not follow Iowa law.  On our de novo review, we also have not considered Maier's valuation of the properties.

We affirm the decision of the district court.

**AFFIRMED.**